### ELLIOT M. PECK AND ANOTHER vs. CHARLES M. WEEKS.

The defendant was a carrier of freight by a steamboat making daily trips from Bridgeport to New York, and was accustomed to carry dressed poultry for the plaintiffs, who were dealers in that article and who lived upon a railroad running into Bridgeport. It was their custom to send the poultry packed in boxes by the railroad, in season for the boat, to be forwarded by the agents of the railroad by the boat, unless there was reason to fear that the boat would be detained, and in that case, by the New York railroad; and in several cases where the boat was detained, the agents of the boat had transferred the poultry to the railroad, for the evening freight train to New York. A quantity of poultry was sent by the plaintiffs by the railroad on the 13th of May and delivered on board the boat, packed in ice and directed to certain poultry dealers in New York, and a receipt taken for the boxes, stating their contents, signed by the clerk of the boat. The delivery was in season for the trip of that day but the boat was detained by the fog and did not leave until the 15th of May. The delay was unavoidable. No care however was taken of the poultry by the persons in charge of the freight, and in consequence the ice melted and the poultry became injured. Held that the defendant was liable.

Held that it was no excuse that the clerk of the boat signed the receipt without examination and had no actual knowledge of the contents of the boxes.

The declaration stated the delivery of the poultry to the defendant on board the boat, and his receipt of the same to carry to New York on that day, and alleged that he did not proceed with the boat to New York on that day nor within a reasonable time afterwards, "but so negligently conducted himself in this behalf that said poultry were not conveyed to New York and delivered there until the same, in consequence of such negligence, became spoiled." Held that this was a sufficient averment of negligence in the care of the poultry. [Two judges dissenting.]

ACTION on the case for the negligence of the defendant as a common carrier, in the transportation of two boxes of

dressed poultry from Bridgeport to New York for the plaintiffs; brought to the superior court in Fairfield county. The declaration contained several counts, the fourth of which was as follows :—

And the plaintiffs further say that they, at the special instance and request of the defendant, on the 13th of May, 1864, at Bridgeport aforesaid, caused to be delivered to the defendant divers other goods and merchandize, to wit, two other boxes of poultry, of like description to that set forth in the preceding counts of this declaration, of the value of two hundred and fifty dollars, to be carried by the defendant in and by a certain steamer called the Bridgeport, from Bridgeport aforesaid to the city of New York aforesaid, and there at said New York to be delivered to the plaintiffs, for certain freight and reward to the defendant in that behalf paid, the dangers of the sea, the enemies of the country, and the act of God, excepted; and he, the defendant, then and there received the same for the purposes aforesaid. And although the said steamer might have proceeded soon after said delivery, to wit, on the 13th of May aforesaid, from said Bridgeport to said city of New York, and then the defendant could have safely delivered said poultry to the plaintiffs, and it was the duty of the defendant so to have proceeded with said steamer from said Bridgeport to said New York on said last mentioned day, and at said last mentioned place to have delivered to the plaintiffs said poultry in good condition, and no danger of the seas, nor the act of God, nor the enemies of the country, prevented the defendant from proceeding with said steamer from said Bridgeport to said New York, and safely delivering said poultry in good condition to the plaintiffs as aforesaid; yet the defendant, not regarding his duty in that behalf, did not proceed with said steamer and convey said poultry from said Bridgeport to said New York on the day of the delivery thereof to him, nor within a reasonable time afterwards, and deliver the same to the plaintiffs in said city of New York, but so negligently and carelessly and improperly conducted himself in this behalf, that for want of due care in said defendant and his servants, said poultry was not conveyed to New York

and delivered to the plaintiffs until the same became and was, in consequence of said carelessness and negligence, decayed and spoiled, and of no value to the plaintiffs, and became and was wholly lost to the plaintiffs.

The case was tried upon the general issue, closed to the court, and the following facts specially found by the court.

The defendant was captain of a steamboat plying between Bridgeport, Connecticut, and the city of New York, carrying passengers and freight for hire, leaving Bridgeport daily at eleven o'clock at night and arriving at New York at about four o'clock the next morning. The Housatonic railroad has its southern terminus at Bridgeport, and the plaintiffs resided and did business at Newtown, about sixteen miles above Bridgeport on the railroad. They were engaged, and for several years had been, as partners, in the purchase, packing and forwarding of dressed poultry to the city of New York for market there; and they had been accustomed for several years to send their poultry in boxes by the Housatonic railroad to Bridgeport, with the understanding that the railroad company would there provide for its early conveyance by steamboat or railroad to New York city—generally by steamboat if they could go in that way without delay. On the 13th of May, 1864, about eleven o'clock in the forenoon, the plaintiffs delivered to the railroad company at their station in Newtown about 900 pounds of dressed poultry in good condition, contained in two boxes and properly packed in ice. The boxes were addressed, by a printed card nailed thereon, to "A. & E. Robbins—Dealers in poultry and game of all kinds, Nos. 125–127, Fulton Market, New York," with the words "for W. Ward" added in manuscript. The railroad company received the boxes, carried them to Bridgeport, and about four o'clock of the afternoon of the same day delivered them on board the defendant's steamboat, taking from W. H. Wilson, the clerk and freight agent of the boat, the following receipt therefor:—"May 13th, 1864. Steamer Bridgeport received of Housatonic R. R. Company, in good order, for W. Ward, New York, two boxes poultry, 890 pounds. $1.28 prepaid. A. & E. Robbins. W. H. Wilson, Clerk of Steam-

boat." The clerk signed the receipt without examination and in fact did not know the nature of the contents of the boxes until after the departure of the steamer for New York. On the 13th and 14th of May, which were Friday and Saturday, the harbor of Bridgeport, the channel through which is narrow and crooked, was covered by a fog so dense and continuous that the defendant thought it not safe, and it was in fact unsafe, for him to attempt to pass out with his boat, and he was compelled to wait, and in the exercise of reasonable prudence waited, until the afternoon of the 15th of May, when the steamer got under way, and after a further detention by the fog on the way, reached New York about ten o'clock in the forenoon of Monday, the 16th of May.

No attention was given by the agents of the boat to the boxes of poultry during the delay or on the passage, and on their delivery at New York the ice had melted and the poultry had become damaged to the amount of $60.

Ward, one of the plaintiffs, on the afternoon of Friday, the 13th, went by railroad to the city of New York for the purpose of receiving the poultry on the arrival of the steamer the next morning; but the steamer not arriving he returned on Saturday afternoon, reaching Bridgeport about five o'clock. He there saw the steamboat still at the wharf in Bridgeport and there was time for the removal of the poultry to the regular freight train which was to pass through Bridgeport for New York about two hours thereafter, but he did not attempt it, as he supposed he could not accomplish it in season to take the last train of the day for his home in Newtown. The freight agent of the Housatonic railroad, who delivered the poultry on board the boat, was at Bridgeport on Saturday the 14th about two o'clock in the afternoon, and there saw the boxes still remaining upon the boat and suggested their removal to the cars to a person whom he supposed to belong to the boat, but who had no authority with regard to the freight. He did not see the defendant or the clerk and their attention was not called to the subject.

By a general regulation the railroad company was not obliged to receive freight for New York at Bridgeport for their

evening freight train when delivered later than half-past four o'clock; but they in fact frequently received goods for that train as late as seven o'clock. The agents of the steamboat had sometimes transferred boxes of poultry from the boat to the cars where they had been placed on the boat by the Housatonic railroad company and there was reason to expect that the boat would be unable to make her trip; and one of the plaintiffs had made such a transfer of poultry from the boat to the cars after seven o'clock in the evening.

A general custom prevailed among steamboat and railroad companies to advertise to carry fresh poultry at the owner's risk, of which the Housatonic railroad company had knowledge; and on the 13th of May, 1864, and for a long time before, the defendant had so advertised, and had put up and kept a printed notice to that effect in a conspicuous part of his boat; but the plaintiffs had not seen this advertisement or notice and had no knowledge of it.

Upon these facts the case was reserved for the advice of this court.

*Sturges*, for the plaintiffs.

1. It is found by the court that the poultry was well packed, was delivered in good condition, and was received as poultry on the steamboat on the same day, and a receipt given by the clerk and freight agent, describing the contents of the boxes as poultry; besides which they were directed on the outside to persons described as poultry dealers in New York. There was inexcusable negligence on the part of the freight agent, both in not knowing the contents of the boxes and in making a receipt which was calculated to mislead the railroad agents by leading them to expect that the boxes would receive the care that the character of their contents required. Acceptance by the proper servants is acceptance by the defendant. Redfield on Railways, 248. It is also found that when the boat before that time had been prevented from making her regular trips the defendant had sometimes transferred poultry to the cars for transportation as late as seven o'clock in the afternoon. It is clear therefore that this might have been done

on the evening of the 13th and at any time on the 14th. Now the law is well settled that if the defendant by the use of due diligence could have prevented this damage and did not, he is liable. 1 Parsons on Cont., 638 ; 2 Hilliard on Torts, ch. 46, § 15 ; *Clark* v. *Rochester and Syracuse R. R. Co.*, 4 Kernan, 570, 575 ; *Richards* v. *London and South Coast Railway*, 7 Man. Grang. & Scott, 858. When the damage to the property has been proved by the plaintiff, the law casts the burden upon the defendant of showing that it was caused by a peril for which he was not liable and that care on his part would not have prevented it. No fact is found showing that the defendant put this property in a suitable place on the boat. It might have been placed near the boilers and the ice thereby speedily melted. *Clark* v. *Barnwell*, 12 Howard, 280 ; *Nelson* v. *Woodruff*, 1 Black, 156, 160 ; *The Brig Cullenberg*, id., 170 ; *Williams* v. *Vanderbilt*, 28 N. York, 217 ; *Michaels* v. *N. York Central R. R. Co.*, 30 id., 564 ; *Richards* v. *Gilbert*, 5 Day, 415 ; *Oakley* v. *Steam Packet Co.*, 34 Eng. L. & Eq., 530 ; Redfield on Railways, 696. The rule, in *pari delicto*, has no application where the law casts the responsibility on the defendant. 1 Hilliard on Torts, ch. 4, § 17 *a*. A common carrier cannot relieve himself from liability by giving notice. 2 Hilliard on Torts, ch 36, § 24 ; 1 Parsons on Cont., 708 ; *New Jersey Steam Navigation Co.* v. *Merchants Bank*, 6 Howard, 382 ; *Phillips* v. *Clark*, 2 Com. Bench, N. S., 156.

2. It is sufficiently alleged in the fourth count that the defendant conducted himself so negligently in the care of the property committed to his keeping for transportation that it was thereby spoiled. This count contains direct averments to that effect.

*Treat* and *Blake*, for the defendant.

1. The only question raised by the pleadings is whether the defendant proceeded to New York with his steamboat in a reasonable time, or failed to go without reasonable excuse. This is the only issue and it is completely disposed of by the finding. It is found that the navigation was in fact unsafe,

and that the defendant acted prudently in delaying. The detention was therefore an " act of God," for which the defendant cannot be held liable.   *Williams* v. *Grant*, 1 Conn., 487.

2. The plaintiffs claimed below that the defendant was chargeable for not putting the poultry on the cars when it became apparent that the boat could not make her trip. But, 1st. There is no count to this effect, and we cannot be called upon to answer it under the pleadings.   2d. If the claim is to be regarded as in issue it is fully met by the finding.   The case finds that the Housatonic Railroad Company, and not the defendant, were the agents of the plaintiffs to forward the poultry to New York *by boat or cars*, such agency having been long established and fully understood and acted upon by all the parties.   1 Parsons on Contracts, 673.   Also that the Housatonic Railroad Company,  thus  agents  of the plaintiffs, knew that the owners of the steamboat assumed no risk for dressed poultry or responsibility for its charge.   Also that both the plaintiffs and the Housatonic Railroad Company, their agents, knew that the poultry could not go by the boat, in time to send it by the freight train, but neglected to remove it or to call the attention of the steamboat officers to it, who would in that case have removed it themselves, but who  did not know that they had poultry on board till after the departure of the boat for New York.   If it is true therefore that the poultry would have reached New York uninjured if sent by cars on Saturday night, and that there was an  omission of duty  by the defendant, which we deny, still  it appears that the plaintiffs' negligence contributed materially to the loss and they cannot recover.   But it is not found that if the poultry had gone to New York by cars on Saturday night it would have arrived there uninjured.   It does not appear therefore that the neglect to do this caused the injury.

HINMAN, C. J.   The defendant runs a steamboat between Bridgeport and New York for the transportation of passengers and freight, advertised to make daily trips each way.   In the course of business he receives freight sent by the Housa-

tonic railroad for New York. On the 13th day of May, 1864, the plaintiffs put on board the cars at Newtown two boxes of dressed poultry to be transported to New York, consigned and directed to "A. & E. Robbins, dealers in poultry and game, Nos. 125, 127, Fulton Market, New York." The boxes, with the poultry properly packed in ice, were taken by the cars to Bridgeport, and, on the same day, and in time for the trip to New York of that day, were delivered on board the steamboat, and a receipt for them, signed by the clerk of the boat, admits that they were received in good order, and that the boxes contained 890 pounds of poultry. The plaintiffs were also dealers in poultry, which they had been in the habit of sending in the same way to New York, by this same steamboat. But in this instance the steamboat was detained by the fog in the harbor of Bridgeport until the 15th of May, and the ice in which the poultry was packed melted, so that the contents of the boxes were damaged; and the question is, whether, under the circumstances of the case, the defendant is liable for this damage. A common carrier is in the nature of an insurer for the safe carriage and delivery of the goods intrusted to him. As it is his duty to carry safely, there is implied in it at least such reasonable care of the goods as might be expected of an owner under like circumstances, and the extent of this care must always depend to a great extent upon the nature of the goods. Perishable goods of course require more care than others which are not perishable. The finding shows that the defendant himself recognized this liability in reference to such goods, as it appears that, when a failure of the steamboat to perform its regular trip had been apprehended, poultry previously placed on board of it by the railroad agents had been sometimes transferred to the cars for an earlier transportation to New York.

Now the liability of a carrier is *prima facie* fixed by showing the delivery to him, and the non-delivery to the consignee, or the delivery to the latter in a damaged condition; and it is for the carrier to show that such non-delivery, or delivery in a damaged condition, was caused by one of the perils for which he is not responsible. How then is this lia-

bility to account for the injury to the poultry in the present case met? The finding shows an utter absence of any attempt to preserve the poultry, either by transferring it to the cars, or by placing it in a part of the boat the least likely to be affected by the heat of the boiler. Indeed an attempt is made to excuse this total want of care by the claim that the clerk, who signed the receipt for the two boxes, did it without any knowledge as to their contents, or any knowledge even of the language of the receipt which he signed. And, it would seem that he could have had no knowledge of the language of the receipt, if he had none of the contents of the boxes, because the receipt expressly mentions the boxes as containing poultry, and gives the weight of it. Besides, the fact that they were addressed to poultry dealers in New York, had care enough been taken of them to look at the direction, would have suggested to an experienced man, engaged in a familiar business, what the boxes probably contained. It is found, moreover, that had the clerk been apprised of the contents of the boxes they would have been transferred to the cars, after the boat's passage to New York for that day was relinquished. From this it is clear that the defendant himself understood his duty in such a case to be, either to forward such goods by some other conveyance without delay, or to take such care of them as to prevent injury by the delay. But as in point of law he must be deemed to have been apprised of the contents of the boxes, in consequence of the reception of them by the clerk of the boat, and his giving a receipt for them in which the contents of the boxes are expressly stated, his liability is the same as if he had kept a distinct remembrance of them constantly in his mind. Taking the whole finding therefore together, it appears to us that the injury to the poultry was caused by the negligence of the defendant in not apprising himself of the contents of the boxes, and so not taking any care whatever of them or their contents. For aught that appears the boxes may have been placed so near the boiler as to melt the ice, and thereby cause the loss. If so no one could doubt that this would be gross negligence in a carrier of this kind of property; and it

is rather an aggravation than an excuse for the negligence, that the clerk of the boat signed the receipt without giving any attention whatever to its contents, since by so doing he left the plaintiffs or their agents to suppose that the usual care which such property required would be bestowed upon it in the course of its transportation; and this prevented them from themselves paying that attention to it which they would otherwise have done. We are therefore satisfied that the plaintiffs are entitled to the amount of damage the property is found to have suffered, on the ground of the defendant's negligence.

But it is further claimed that, admitting this to be so, still the plaintiffs can not recover in this suit, because there is no count in the declaration adapted to the recovery of damages on the ground of the defendant's negligence; that all the counts are so framed as to seek for a recovery on the sole ground of delay in the sailing of the steamboat; and that this delay, being caused by the fog, was a peril which excused the carrier. If this claim was well founded in fact, there doubtless would be force in it. But we think the fourth count is properly adapted to the recovery of damages for negligence, as well as for delay in sailing within a reasonable time. That count, after stating the delivery of the property to be carried, and the reception of it for that purpose by the defendant on board his boat, and that the boat did not proceed to New York on the day of the delivery, nor within a reasonable time thereafter, and deliver the property to the plaintiffs in the city of New York, goes on to allege, that "the defendant so negligently, carelessly and improperly conducted himself in this behalf, that, for want of due care in said defendant and his servants, said poultry was not conveyed to New York and delivered to the plaintiffs until the same became and was, in consequence of said carelessness and negligence, damaged and spoiled, and of no value to the plaintiffs." Here the gravamen is the carelessness and negligence of the defendant in not taking care of the property, and in not safely delivering it to the plaintiffs in New York, by reason of which it became spoiled. We are therefore of opinion that the in-

jury which the plaintiffs suffered through the negligence of the defendant, was the proper subject of recovery under this count; and we accordingly advise the superior court to render judgment for the plaintiffs for the injury complained of.

In this opinion BUTLER and CARPENTER, Js., concurred. McCURDY and PARK, Js., were of opinion that the averments of the declaration applied only to negligence on the part of the defendant in not proceeding with the boat to New York, and did not apply to negligence in not taking care of the poultry while being transported; and they therefore dissented.