THE WESTERN TRANSPORTATION COMPANY, Appellant, *v.* JESSE HOYT et al., Respondents.

To entitle a carrier, who has contracted to transport goods and to deliver them to the consignee, to freight, a complete delivery must be made; a carriage of the goods in safety to the place of delivery is not sufficient.

Where a carrier, in violation of his contract, upon arrival of the goods at the place of delivery, stores instead of delivering them, the fact that the consignee obtains possession thereof from the warehouseman does not entitle him to the freight contracted for; nor where the consignee so obtains the goods under claim of right to possession discharged from all claim for freight is such a receipt an acceptance which will entitle the carrier to *pro rata* freight.

To justify a claim for *pro rata* freight there must have been a voluntary acceptance at an intermediate port, such as will raise a fair inference that a further carriage of the goods was intentionally dispensed with; the taking possession from necessity to save the property from destruction, or in consequence of the wrongful act of the carrier, or of his refusal to perform his contract, will not entitle him to any freight.

So where the carrier, after a delivery of a portion of the goods, stores the residue, he cannot recover freight upon the portion delivered.

Where, however, the carrier has advanced the charges of an antecedent carrier, who transported the goods under an independent contract, he becomes subrogated to the rights of the latter, and may recover such advances, although he fails to perform his own contract; and the fact that his bill of lading is for transportation and delivery upon payment of freights and charges, does not deprive him of such right.

(Argued March 23, 1877; decided April 10, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon an order nonsuiting plaintiff on trial.

This action was brought by plaintiff as a common carrier

to recover freight and charges on a cargo of oats alleged to have been transported for and delivered to defendants.

Plaintiff received the oats at Buffalo, giving the following bill of lading therefor:

"BUFFALO, *October* 9th, 1869.

Shipped by Barclay, Bruce & Co., in apparent good order, on board canal boat 'Clio,' of W. T. Co. Line, Captain ——, the following described property, to be transported to the place of destination, without unnecessary delay, and delivered to the consignees; in like good order, as noted below in the customary manner, free of lighterage, upon payment of freight and charges, as prescribed in this bill. Consignees to pay all harbor towing, from and to the usual place of landing. Three week days, regardless of weather after arrival, and notice of same, to be allowed consignees to discharge this cargo, after which time the cargo, or consignees, are to pay demurrage, at the rate of one and one-half per cent. per day, upon the freight, including tolls, for each and every day of such demurrage, over the three days as above specified, until the cargo is fully discharged. All damage, caused by the boat or carrier, or deficiency in the cargo, from quantity, as herein specified, to be paid for by the carrier, and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignees. In case grain becomes heated, while in transit, the carrier shall deliver his entire cargo, and pay only for any deficiency, caused by heating, exceeding five bushels, for each one thousand bushels. The freight, charges and demurrage, payable to —— or order, at the place of destination, who is the only party authorized to collect the same, and whose receipt shall be in full, for all demands on this cargo or bill of lading.

Tolls on this cargo having been advanced by shippers, if refunded, must be to them or their order.

Acc. Geo. Ellison,     14,650 bush. No. 2 oats, ex. cargo,
  Care Jesse Hoyt & Co.,  Bk. Pathfinder, Canal.
      New York.    Frt. Buff. to N. Y., 10.
            Lake frt. and Buff. Chgs.,    $5\frac{3}{4}$—842.38

Subject to Barclay, Bruce & Co.'s sight draft on Messrs. Jesse Hoyt & Co., New York, for fifty-six hundred and three 63-100 dollars for advances.

The W. T. Co.,

G. P. MORGAN."

The boat with the oats arrived safely at New York, Friday, November 5th, 1869, and notice thereof was given to the consignees on the same day at ten minutes past twelve. On the next day and on Monday defendants were requested to give the boat dispatch, and on Tuesday, the 9th November, they were notified that unless the cargo was discharged it would be put in store. On the 9th, 5,000 bushels were removed from the boat by an elevator procured by defendants. After the delivery of that amount, the elevator stopped. Plaintiff's agent thereupon directed that if the boat was not discharged by six p. m., to take it to store. At about that hour, it not having been discharged, it was by plaintiff's order taken to Brooklyn, and the oats stored with one Barber, a warehouseman. In March, 1871, Barber delivered the possession of the oats to defendants upon their demand, they indemnifying against any claim of the plaintiff.

Further facts appear in the opinion.

*Henry W. Johnson,* for the appellant. Plaintiff's duties and responsibilities as a common carrier terminated on the arrival of the boat at New York city. (*Hathorn* v. *Ely,* 28 N. Y., 78; Angell on Carriers, § 302; *Norway Plain Co.* v. *B. & Me. R. R. Co.,* 1 Gray, 273; *Mer. D. & Tr. Co.* v. *Hallock,* 64 Ill., 284; *Ely* v. *N. H. Stbt. Co.,* 53 Barb., 214; *Fenner* v. *Buffalo & S. L. R. R. Co.,* 44 N. Y., 505; *At. Nav. Co.* v. *Johnson,* 4 Robt., 474; 1 Kay's Shipmaster and Seaman, 348, 352.) Defendants had no right to treat the boat as a storehouse. (*Huntley* v. *Dows,* 55 Barb., 310.) Plaintiff was entitled at least to recover the freight on the portion of the cargo taken out and carried away before the removal of the boat. (*Hindsdell* v. *Weed,* 5 Den., 175; 1 Pars. on Shipping, 205; *Green* v. *Clark,* 5 Den., 497, 503; *Towle*

v. *Stevenson*, 1 J. Cas., 110; *Codwise* v. *Hacker*, 1 Cai., 526; *Dart* v. *Ensign*, 47 N. Y., 622; *Lee* v. *Salter*, H. & D. Sup., 163.)

*C. Van Santvoord*, for the respondents.   The cargo not having been delivered, or held in readiness for delivery, to defendants in New York during the stipulated time, there could be no recovery of freight.   (Ang. on Car., §§ 398, 282; *W. T. Co.* v. *Barber*, 56 N. Y., 544; *Duthie* v. *Hilton*, L. R. (4 C. P.) 138; 1 Pars. on Shipping and Admiralty, 220.)   There was no authority for a recovery on part performance in case of a willful dereliction of the contract as to the residue.   (*Jennings* v. *Camp*, 13 J. R., 94–97; *Champlin* v. *Rowley*, 18 Wend., 187; *Davis* v. *Pattison*, 24 N. Y., 317, 319, 324.)

CHURCH, Ch. J.   The decision in the case of the present plaintiff against Barber (56 N. Y., 544), disposes of some of the questions involved in this case.   That was an action for conversion against the warehouseman for delivering the oats to the defendants, and it was there held that the proper construction of the bill of lading was to give the defendants, who were consignees, three full week days to discharge the cargo, and such reasonable time after that period as the circumstances might require, upon paying the specified demurrage. but that the carrier might terminate this additional privilege or right by a proper notice.   It appears in this, as in that case, that notice of the arrival of the boat " Clio " was given to the consignees on Friday, at ten minutes past twelve, and it was not disputed on the trial that when the notice is after twelve o'clock, that day is not to be counted as any part of the three days given absolutely for the discharge of the cargo, and it appeared, and seems not to have been disputed, that the three days would not expire until Tuesday night at twelve o'clock.   We held that the act of the carrier in removing his boat, and storing the grain elsewhere, on Tuesday, prior to the expiration of the three days, was wrongful,

and amounted to a conversion, and deprived him of his lien for freight. The case was not materially changed in this respect upon the trial of this action. The notice which was claimed to have been given was given on Tuesday morning, to the effect that unless the cargo was discharged on that day the oats would be stored. Such a notice would not relieve the plaintiff from the consequences of his wrongful act in storing the oats, for the reason that the day extended, as was proved, to midnight, and the plaintiff violated the notice by removing the boat several hours previously. He could not by a notice shorten the time fixed by the contract itself. The construction of the bill of lading, the character of the act of the plaintiff in storing the oats, and the effect of the act upon its rights to a lien for freight must be regarded as adjudged and settled in the case referred to.

Other questions are presented upon this appeal which must be considered. About 5,000 of the 14,000 bushels of the oats were removed from the boat by the elevator procured by the defendants, and the remainder were stored in Barber's warehouse. Subsequently the defendants demanded and obtained possession of the oats from Barber upon giving him indemnity against any claim of plaintiff for freight or for the oats. It is urged that the defendants taking possession of the property entitled the plaintiff to the freight. There is some apparent plausibility in equity in this position, but it must be observed that a delivery to the consignees is as much a part of the contract as the transportation. Mr. Angell in his work on carriers, says: "It is not enough that the goods be carried in safety to the place of delivery, but the carrier must, and without any demand upon him, *deliver*, and he is not entitled to freight until the contract for a complete delivery is performed." (§ 282.) When the responsibility has begun, it continues until there has been a due delivery by the carrier. (Id., note 1, and cases cited. Parsons on Shipping, 220.) And in this case, the bill of lading expressly requires the property to be transported *and delivered* to the consignees. The delivery was as essential to

performance as transportation to New York, and it is a substantial part of the contract. The plaintiff might as well, in a legal view, have stopped at Albany, or any other intermediate port, and stored the grain, as to have stored it in Brooklyn. In either case he could not aver a full performance, nor that he was prevented by the defendants from performing. It follows that he cannot recover upon the contract. Performance is a condition precedent to a recovery. As said by Lord ELLENBOROUGH in *Liddard* v. *Lopes* (10 East, 526), "The parties have entered into a special contract by which freight is made payable in one event only, that of a right delivery of the cargo according to the terms of the contract, and that event has not taken place, there has been no such delivery, and consequently the plaintiff is not entitled to recover."

As the plaintiff cannot recover under the contract, if he has any claim for freight it is only for *pro rata* freight, which is sometimes allowed, when the transportation has been interrupted or prevented by stress of weather or other cause. In such a case, if the freighter or his consignee is willing to dispense with the performance of the whole voyage, and voluntarily accept the goods before the complete service is rendered, a proportionate amount of freight will be due as "freight *pro rata itineris*." This principle was derived from the marine law, and it is said that the common law presumes a promise to that effect as being made by the party who consents to accept his goods at a place short of the port of destination, for he obtains his property with the advantage of the carriage thus far. The principle is based upon the idea of a new contract, and not upon the right to recover upon the original contract. The application of this principle has been considerably modified by the courts. In the early case of *Luke* v. *Lyde* (2 Burr., 889), a contract was inferred from the fact of acceptance, and the rule was enunciated without qualification that from such fact, without regard to the circumstances, and whether the acceptance was voluntary or from necessity, a new contract to pay *pro rata* freight might

be inferred.   Some later English cases, and the earlier American cases, apparently followed this rule; but the rule has been in both countries materially modified, and it is now held that taking possession from necessity to save the property from destruction, or in consequence of the wrongful act of the freighter, as in *Hunter* v. *Prinsey* (10 East, 394, and in 13 M. & Wels., 229), where the master caused the goods· to be sold, or when the carrier refuses to complete the performance of his contract, the carrier is not entitled to any freight.   PARKE, B., in the last case stated the rule with approval, that to justify a claim for *pro rata* freight there must be a voluntary acceptance of the goods at an intermediate port, in such a mode as to raise a fair inference that the further carriage of the goods was intentionally dispensed with ; and Lord ELLENBOROUGH, in *Hunter* v. *Prinsey* (*supra*), said : " The general property in the goods is in the freighter ; the ship-owner has no right to withhold the possession from him unless he has either earned his freight or is going on to earn it.   If no freight be earned, and he decline proceeding to earn any, the freighter has a right to the possession."

THOMPSON, Ch.J., in 15 J. R., 12, said : " If the ship owner will not or can not carry on the cargo, the freighter is entitled to receive his goods without paying freight."   It is unnecessary to review the authorities.   The subject is considered in Angell on Carriers (§ 402 to 409), and Abbott on Shipping (5th Am. ed., 547), and in the notes and numerous cases referred to, and the rule as above stated seems to have been generally adopted by nearly all the recent decisions, and its manifest justice commends itself to our judgment. In this case no inference of a promise to pay *pro rata* or any freight can be drawn.   The circumstances strongly repel any such intention.   The carrier doubtless acted in accordance with what it believed to be its legal rights, but the act of storing was a refusal to deliver, and as we held in the Barber case (*supra*), a wrongful act amounting to conversion, quite equal in effect to the sale of the goods in the cases cited.

The carrier must therefore be regarded as refusing to deliver the oats.   Neither the owner nor his consignee intended to waive a full performance or to assume voluntarily to relieve the plaintiff from non-performance.   They claimed the possession of the property and the right to possession discharged from all claim for freight, and indemnified the warehouseman against such claim.   Every circumstance repels the idea of a promise to pay *pro rata* freight.   The case stands, therefore, unembarrassed by the circumstance that the consignee took possession of the property under the circumstances, and it presents the ordinary case of an action on contract where the party seeking to enforce it has not shown a full performance.

The next question is, whether the plaintiff is entitled to freight upon the 5,000 bushels delivered.   The contract for freight is an entirety, and this applies as well to a delivery of the whole quantity of goods as to a delivery at all, or as to a full transportation.   (Parsons on Shipping, 204.)   There are cases where this rule as to quantity has been qualified, but they have, I think, no application to the present case. The delivery of the 5,000 bushels was made with the understanding and expectation that the whole quantity was to be delivered, and no inference can be drawn of an intention to pay freight in part without a delivery of the whole.   The quantity delivered must be regarded as having been received subject to the delivery of the whole cargo.   There was no waiver.   The principle involved is analogous to a part delivery from time to time of personal property sold and required to be delivered.   If the whole is not delivered, no recovery can be had for that portion delivered.   (18 Wend., 187; 13 J. R., 94; 24 N. Y., 317.)

The claim for lake and Buffalo charges stands, I think, upon a different footing.   These are stated in the bill of lading at 5¾ cents a bushel, amounting to $842.38.   It must be presumed, as the case appears, that the plaintiff advanced these charges, and if so it become subrogated to the rights of the antecedent carrier.   The claim for these charges was

complete when the plaintiff received the property to trans-port, and was not merged in the condition requiring the performance of the contract by the plaintiff to transport the property from Buffalo. That contract was independent of this claim. The bill of lading is for transportation and delivery upon payment of freight and charges; but if the plaintiff had a right to demand any part of the charges inde-pendent of the bill of lading, that instrument would not deprive him of such right. We have been referred to no authority making a liability upon such an advance dependent upon the performance of the contract for subsequent carriage. If the action had been by the lake carrier to recover for the freight to Buffalo, it is very clear that the defendants could not have interposed as a defence that the carrier from Buffalo had not performed, and why is not the plaintiff entitled to the same rights in respect to this claim as the former carrier ?

I am unable to answer this question satisfactorily as the case now appears.

If these views are correct, a nonsuit was improper, and there must be a new trial with costs to abide event.

All concur, except ALLEN, J., taking no part, and ANDREWS, J., absent.

Judgment reversed.