## THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT, *v.* THE STANDARD OIL COMPANY, RESPONDENT.

*Contract for transportation of oil—when a carrier is bound to unload the goods, to entitle him to freight—effect of a clause placing the goods at the risk of the shipper.*

A contract, by which the plaintiff agreed to transport oil for the defendant, provided that the plaintiff should at its own expense load the oil and transport it over its road to Athens "and thence by barges to the warehouse of the party of the first part (the defendant) at Hunter's Point," and that it should provide suitable covered cars, and haul the same over its road "and cause the same to be unloaded and returned without delay." The defendant agreed to pay "on the delivery" of the oil. The barge was destroyed while lying at a dock of the defendant's warehouse by a fire which originated on a tank boat used by the defendant.

*Held*, that the plaintiff was required by the contract to unload the oil from the barges at the defendant's warehouse, and that it could not recover freight for the oil therein, which had not yet been unloaded therefrom.

By the contract the defendant agreed "to assume all risks and loss of its property by fire when in the charge or custody of the party of the second part, whether said property is being moved upon cars or barges, or is stored or awaiting transportation at any point."

*Held*, that this clause was only intended to relieve the plaintiff from its common law liability for the destruction of the oil by fire, and did not entitle it to recover freight for oil destroyed before actual delivery. (BRADY, J., dissenting.)

Appeal by the plaintiff from a judgment, entered upon the report of a referee.

The action was brought to recover an amount alleged to be due to the plaintiff for transporting oil belonging to the defendant, in pursuance of a contract entered into between the parties hereto. The oil had been transported by the plaintiff from Buffalo to Hunter's Point, and was destroyed by fire while in a barge lying at the dock of the defendant's warehouse. The fire originated on a tank boat in the use of the defendant. The defendant claimed that the plaintiff was not entitled to recover freight thereon because the oil had not been actually unloaded from the barge.

*William A. Beach*, for the appellant.

*George A. Black*, for the respondent.

Ingalls, J.:

There is practically but one question of importance in this case, which is whether the plaintiff had earned, and was entitled to recover, for the transportation of the oil which was destroyed in the barge. And the determination of such question depends upon whether or not, in view of the facts, the oil had been delivered by the plaintiff to the defendant previous to its destruction. The contract provides, in regard to the obligation assumed by the plaintiff to transport the said oil, as follows, viz. :

" Fourth. The party of the second part agrees to transport said product of said refineries not to exceed, however, the quantity specified in article one, and at their own expense to load the same and transport it over their respective railroads, as follows : ' During the season of navigation on the Hudson river to Athens, and thence by barges to the warehouse of the party of the first part at Hunter's Point, Long Island City, Long Island, and during closed navigation on the Hudson river, at the warehouse of the party of the first part at Sixty-fifth street, New York city, contiguous to the tracks of the party of the second part, and deliver the same in good order and condition, except as provided in articles two and three.'

" Fifth. The New York Central and Hudson River Railroad

Company agrees that it will (on or before the 1st day of June, 1873) furnish 700 suitable covered cars to be used continuously in the execution of this contract, and haul said cars, as also those furnished by the Lake Shore and Michigan Southern Railway Company in full trains over its road with promptness and uniformity of movement, and cause *the same to be unloaded and returned without delay* upon their arrival at place of destination, during the months of April and May." The contract provides further in regard to the obligation of the defendant, as follows : " The party of the first part agrees to pay to the party of the second part *on the delivery of said products,*" etc.

The barge containing the oil lay alongside the dock about sixty feet distant from the defendant's warehouse. At the edge of the dock an incline plane was so adjusted that a barrel of oil placed upon it from the barge would roll by force of gravitation into such warehouse. When the fire occurred, the oil was in process of removal from the barge to the warehouse. The plaintiff was allowed by the referee compensation for transporting all the oil which had been removed from the barge previous to the fire. The right of the plaintiff to demand compensation depended upon the performance of the contract, which, as we interpret it in the light of the surrounding circumstances, obligated the plaintiff to remove the oil from the barge before compensation could be considered earned. So the referee held, and examination and reflection satisfies us that he was correct. We perceive nothing in the case which would justify a conclusion that strict performance on the part of the plaintiff has been waived or excused by the defendant. The simple fact that the defendant paid men who were engaged in unloading barges in 1873, which were laded with oil, would not justify an inference that the defendant was under obligation to unload the oil in question. The case contains the following admission : " It is admitted that none of the oil was taken off the barges by defendant's employes, although 159 barrels and sixty empties were taken off the barge Barnes and put into the store house of defendant before the fire occurred."

We have examined the various exceptions taken to the rulings of the referee and discover no error which could have prejudiced the plaintiff's case, or which calls for the reversal of the judgment.

We refer to the following cases bearing upon the question of the delivery of the oil. (*The West. Trans. Co.* v. *Hoyt*, 69 N. Y., 234; *Brittan* v. *Barnaby*, 21 How. [U. S.], 532; *De Mott* v. *Laraway*, 14 Wend., 225; *Miller* v. *Steam Navigation Co.*, 10 N. Y., 431.)

The judgment must be affirmed.

DAVIS, P. J.:

I concur with my brother INGALLS in the conclusions he has reached on the several questions discussed by him. But my brother BRADY is of opinion that the provision of the contract relative to the destruction of the defendant's property by fire requires a different view to be taken of the liability of the defendant for freight or property so destroyed. That question not having been considered by INGALLS, J., I feel bound to add a suggestion in reference to it. The provision is as follows : "The party of the first part agrees to assume all risks and loss of its property by fire when in the charge or custody of the party of the second part, whether said property is being moved upon cars or barges, or is stored or awaiting transportation at any point."

This provision was inserted obviously, on account of the inflammable nature of the property, to relieve the plaintiff in case of fire from its common law liability as a carrier. Beyond that object I think it is without scope or purpose. But its language seems clearly to show that it had no reference to the freight earned or to be earned by plaintiff. Such freight is in no sense "the property of the defendant," nor can it become so by any accident of fire or otherwise.

The defendant assumes the loss of "*its property*" by fire, plainly meaning the oil and things connected therewith for the transportation of which the contract provides. The construction given by BRADY, J., of this provision, would make the defendant liable for the freight earned or unearned on all property destroyed by fire while "*in transitu*" at any stage of its transit quite independently of any question of delivery. The suggestion is completely answered by simply observing that the provision in question relates only to the *defendant's property*, and that the freight earned or to be earned is at all times the *plaintiff's prop-*

*erty.* The only intention of the contract in this respect is to provide that in case of destruction by fire the loss of defendant's own property should fall on defendant, leaving plaintiff only to bear the loss of the freight which might otherwise be earned by the completion of the contract.

I think the judgment should be affirmed.

BRADY, J. (dissenting).

The right of the plaintiff to recover for all the oil carried depended upon the delivery of it as required by the contract relating to its carriage. By the agreement it was, during the season of navigation, to be transported to the warehouse of the defendant at Hunter's Point, and delivered in good order and condition, and the defendant was to pay on delivery. The contract also provided that the defendant was to assume all risks and loss of its property by fire when in charge or custody of the plaintiff, whether it was being moved upon cars or barges, or stored or waiting transportation. The barges used by the plaintiff arrived at the dock of the defendant at Hunter's Point, and some of the oil in barrels was passed into the warehouse when a fire occurred which originated in a tank in the employment of the defendant, and the fire consumed the barges and the oil which was on board of them. It will be perceived from this statement that the plaintiff was prevented from passing the oil into the defendant's warehouse by a fire which had its origin on the defendant's premises at the place for unloading and delivery and apparently connected therewith, and that the plaintiff, for aught that appears, was not guilty either of negligence or delay. Whether the fire arose from the want of care on the part of the defendant does not appear, and does not seem to have been in issue. This case thus presented seems to result necessarily in the proposition that the freight should be considered to have been earned. The defendant assumed all risks and loss by fire, and the amount of freight was one of the items of risk under the peculiar circumstances of this case. The plaintiff having reached the defendant's dock with the oil, and having begun its delivery, did all that could be done when the fire intervened, and should not, therefore, in justice be held to have lost the freight because it did not do what it was

then impossible to do, namely, to pass the oil into the warehouse. The oil was destroyed at the defendant's dock, and by reason of an incident originating on its premises, and it is a fair interpretation of the contract, as an entirety, therefore that the payment of the freight was one of the losses embraced by the agreement to be borne by the defendant.

It could not have been contemplated by the contracting parties that under such circumstances the freight was not to be paid. For these reasons, thus briefly stated, I do not concur with my brethren.

Judgment affirmed.