The New York Central & Hudson River Railroad Company, Appellant, *v.* The Standard Oil Company, Respondent.

Plaintiff and the L. S. & M. S. R. Co. contracted to load, transport and unload the oil of defendant, to deliver it at its warehouse and pay all terminal expenses ; the freight to be paid on delivery. The contract contained a clause by which defendant assumed " all risks and loss of its property by fire, when in the charge or custody of " the carriers, " whether said property is being moved upon cars or barges, or is stored or awaiting transportation at any point." A quantity of oil which had been transported under the contract, while on board of plaintiff's barges lying at the dock of defendant's warehouse, was destroyed by an accidental fire. In an action to recover the freight thereon, *held* that plaintiff was not entitled to recover, as the freight was earned only upon

delivery at the warehouse ; that the risk assumed was only of loss to de-
fendant's property, relieving the carriers from their common-law lia-
bility.

Also *held,* that plaintiff was not entitled to recover the back charges paid by
it to its co-contractor.

Also *held,* that in case the contract was susceptible of a different construc-
tion, evidence as to general usage as to delivery of freight, of the
course of business and the practice of plaintiff was competent to deter-
mine the intention of the parties.

(Argued December 13, 1881 ; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, made February 6, 1880,
which affirmed a judgment entered upon the report of a ref-
eree. (Reported below, 20 Hun, 39.)

This action was brought to recover freight for the transporta-
tion of three thousand two hundred and fifty-one barrels of oil,
and one hundred and twenty empty barrels, carried from Cleve-
land, Ohio, to Hunter's Point, Long Island, under a contract be-
tween the defendant, as party of the first part, and plaintiff, with
the Lake Shore & Michigan Southern Railway Company, as
party of the second part.

By the contract, defendant agreed to deliver " to the party of
the second part " the product of its oil refineries at Cleveland,
destined for the New York market in quantities specified for
each month, and then followed these clauses :

" 2d.—The party of the first part agrees to assume all risks
and loss of its property by fire, when in the charge or custody
of the party of the second part, whether said property is
being moved upon cars or barges, or is stored or awaiting trans-
portation at any point."

" 4th.—The party of the second part agrees to transport said
product of said refineries, not to exceed, however, the quantity
specified in article first, and at their own expense to load the
same and transport it over their respective railroads as follows,
during the season of navigation on the Hudson river to Athens,
and thence by barges to the warehouse of the party of the first
part at Hunter's Point, Long Island City, Long Island, and
during closed navigation on the Hudson river, at the warehouse

of the party of the first part at Sixty-fifth street, New York city, contiguous to the tracks of the party of the second part, and deliver the same in good order and condition, except as provided in articles second and third."

5th.—The New York Central and Hudson River Railroad Company agrees that it will (on or before the 1st day of June, 1873) furnish seven hundred suitable covered cars to be used continuously in the execution of this contract, and haul said cars, as also those furnished by the Lake Shore and Michigan Southern Railway Company in full trains over its road with promptness and uniformity of movement, and cause the same to be unloaded and returned without delay, upon their arrival at place of destination." * * * *

"6th.—The Lake Shore and Michigan Southern Railway Company agrees that it will (on or before the 1st day of June, 1873) furnish three hundred suitable covered cars to be used continuously in the execution of this contract, and haul said cars, as also those furnished by the New York Central and Hudson River Railroad Company, in full trains over its road with promptness and uniformity of movement, and cause the same to be loaded and returned without delay, upon their arrival at Cleveland." * * * *

"9th.—In consideration of the sum of one dollar acknowledged to be received, and of the faithful performance of the stipulations of this agreement by the party of the second part, the party of the first part agrees to pay to the party of the second part, on the delivery of the said products at the aforementioned points of destination, one dollar and twenty-five cents ($1.25) per barrel, of not to exceed forty-six to forty-eight gallons. It being understood and agreed by and between the party of the second part that the said rate of one dollar and twenty-five cents ($1.25) is to be pro-rated between Cleveland and Hunter's Point or Sixty-fifth street, as follows, viz.: the rate of one dollar and twenty-five cents ($1.25) to be divided, thirty-six (36) cents to the Lake Shore and Michigan Southern Railway Company, and eighty-nine (89) cents to the New York Central and Hudson River Railroad Company. The Lake Shore

and Michigan Southern Railway Company assumes all cost of lighterage and terminal expenses in procuring the said freight at Cleveland, and the New York Central and Hudson River Railroad Company assumes all cost of lighterage and terminal expenses in delivering the said freight between Athens and Hunter's Point or at Sixty-fifth street, New York, for the full term of this contract."

Plaintiff received the oil in question from its co-carrier at Buffalo, paying to it its proportion of the freight. The oil was transported over plaintiff's road to Athens, and then loaded on barges and carried to defendant's warehouse at Hunter's Point. One hundred and fifty barrels of the oil, and sixty-nine empty barrels were delivered, and while the residue was upon the barge it was destroyed as the referee found, by "an accidental fire."

On the trial, defendant was permitted to show, under objection and exception, the general usage in the business of delivering freight, to the effect that in the absence of any contract it was the carrier's duty to put the property on the dock; also the contract between the plaintiff and the owner of the barges for the transportation between Athens and Hunter's Point.

*W. A. Beach* for appellant. As matter of law, in the absence of an express stipulation by plaintiff to unload in the warehouse, or on the dock, transportation to the warehouse dock and tender to defendant was full delivery, so as (had it been a case of sale) to complete performance by plaintiff, and change the title. (Benjamin on Sales, §§ 676, 679, 686; 2 Pars. on Cont. [6th ed.] 190, and note; *Western Transportation Co.* v. *Hoyt*, 69 N. Y. 230; *Sherman* v. *The Hudson R. R. R. Co.*, 64 id. 254; *Fenner* v. *Buffalo & S. L. R. R. Co.*, 44 id. 505, 510; *McKibben* v. *Peck*, 39 id. 262.) Defendant's reception of two hundred and nineteen barrels was, in law, acceptance of the whole, so far as to entitle the carrier to his freight. (*Pain* v. *Bowker*, 1 Parsons on Maritime Law, chap. 7, §§ 1, 3, title "Delivery of the Goods, p. 157, note 4; *Dunham* v. *Bower*, 77 N. Y. 76, 81.) It was error to receive evi-

dence of usage in the delivery of freight. (*Bank, etc.* v. *Bessell,* 72 N. Y. 615; *Bradley* v. *Wheeler,* 44 id. 495, 504.) The back charges paid by plaintiff to the Lake Shore road are recoverable. (*Western Transportation Co.* v. *Hoyt,* 69 N. Y. 230.)

*Henry J. Scudder* for respondent. A delivery to the consignees was as much a part of the contract as the transportation. (*Britton* v. *Barnaby,* 21 How. [U. S.] 532; *De Mott* v. *Laraway,* 14 Wend. 225; *Miller* v. *Steam N. Co.,* 10 N. Y. 431; *Western Transportation Co.* v. *Hoyt,* 69 id. 234.) Proof of the custom as to delivering freight was competent. (*Nelson* v. *Sun Mut. Ins. Co.,* 71 N. Y. 459.)

Danforth, J. The contract at the bottom of this action was between the defendant on one side, and the plaintiff and the Lake Shore &. Michigan Southern Railway Company on the other. The latter company was not joined as plaintiff, but the omission, if in any aspect of the case important, was obviated by a stipulation between the parties to the suit. The breach complained of is the omission of the defendant to pay $3,569.14 as freight earned in the transportation and delivery to it of three thousand two hundred and fifty-one barrels of oil, and one hundred and twenty empty barrels.

The referee found that only one hundred and fifty barrels of oil, and sixty-nine empty barrels were in fact delivered to the defendant, and gave judgment against it for freight earned in transporting them, estimated at the contract-price. The correctness of this decision depends upon the true construction of the agreement.

*First.* It seems obvious that while the mode of transportation was to vary with the season of navigation, yet whether it was all by rail, or partly by water, the plaintiff was bound to deliver the freight " at the warehouse of the defendant." This was the undertaking: to load, and transport and unload; and this last operation was to be performed in either case. Whether the carriage was by land or water, whether by rail or barge, could make no difference. The plaintiff agreed to pay all ter-

minal expenses, and it was only on delivery at the warehouse that the defendant undertook to pay the price of transportation. It was, therefore, essential to performance, and without it, or lawful excuse for failure, the price agreed upon for carriage was not earned. (*Western Transportation Co.* v. *Hoyt*, 69 N. Y. 234; *Richmond* v. *Union Steamboat Co.*, decided December, 1881, by this court.*) Such delivery was not, in fact, made ; and while there was a difference of opinion in the court below (20 Hun, 39), it was not upon this point.

*Second.* A further question was raised, and as to it the learned judges did not agree. It hung, on a clause in the contract by which the defendant assumed " all risks and loss of its property by fire when in the charge or custody of the plaintiff," " whether said property is being moved upon cars or barges, or is stored or awaiting transportation at any point;" and the conceded fact, that after delivery of so much as is above referred to, and while the rest was in the plaintiff's barges, " an accidental fire consumed it."

The appellant's contention is, that without this stipulation, the defendant might refuse to pay freightage in such a case, and "that risk to the carrier, the defendant agreed to assume, and thereby waived the right to claim full delivery." It is sustained by an argument of considerable ingenuity, but not sufficient to raise a doubt of the intention of the parties, or the propriety of the referee's refusal to find in accordance with the plaintiff's view. The risks are not those of every accident or contingency, but only damages from fire, and the loss is limited to one from the same element. So it is confined to the defendant's property; not its property at all times or under all conditions, but while in charge of the plaintiff, and while it is being moved upon cars or barges, or is stored or awaiting transportation. How either one of these terms can be made to apply to a risk incurred by the plaintiff, or to an *inchoate* obligation which is in no sense property of the defendant, I am unable to perceive. Very different language is needed to bring

*Ante*, p. 240.

within the undertaking " risks inflicted by fire " and tending to a loss of partially-earned freight.    So construed, it would go beyond natural justice, which requires payment of the debt one owes, and nullify the very language of the contract, which, following it, makes the obligation of payment depend upon the actual delivery of the goods.

Except for the stipulation, the plaintiff would be bound to pay for the loss of the goods destroyed, and its whole purpose is served by relieving the plaintiff from that obligation. It does not permit us to hold that destruction of property is equivalent to its delivery, or that the event which makes performance impossible entitles the carriers to that compensation, which, by their agreement, was to come only from performance. It relieves them from that absolute liability which would otherwise follow the general promise to transport and deliver, and by reason of which the carrier was held in *Harmony* v. *Bingham* (12 N. Y. 99), and other like cases.

I do not think the evidence of the general usage as to the delivery of freight, or the contract upon that subject between the owners of the barge and the plaintiff, was necessary. The contract was sufficiently explicit and in accord with both. If, however, as the appellant contends, it was susceptible of a construction different from that which has been given to it, it was not improper for the referee to receive the evidence in order that, from this usage, the course of business and the practice of the plaintiff, he might determine the intention of the parties. The intention of the plaintiff might be gathered from its contract with the barge owners, and that of the defendant from the general usage with which it was familiar, and for aught that appears, the evidence was received upon the assumption that plaintiff and defendant knew, at the time of contract, both the custom and the terms of the agreement between the plaintiff and the owners of the boats. (2 Greenl. Ev. 251.)    Nor can the back charges — those paid by the plaintiff to its co-contractor — be recovered.    They were part of the price for transportation, and cannot be separated from the whole.    The duty of the plaintiff and its associate attached on the receipt

of the defendant's property, and was to continue until they . placed it in the defendant's warehouse. They may recover for each barrel so delivered, but not for any others.

We find no error in any of the conclusions in the court below, and think the judgment rendered by them should be affirmed.

All concur.

Judgment affirmed.