Potter, J,
This action was tried before the court, a jury trial having been waived.
There is no substantial dispute in relation to the facts in this case and the decision of the case, is mainly, if not altogether, a question of law.
These are the facts:
Henry Mansfield was the master and owner of the boat, subject to the condition of full payment of the purchase-price to one E. P. Heustis, and upon the 21th day of October, 1884, received a cargo of lumber upon her at Eiver de Loup, in Ganada, to deliver to the defendants as consignees, upon the payment of the freight at the rate specified in the shipping bill. While the boat was lying in Montreal, there was paid, or advanced to said Mansfield, the sum of $125, which was indorsed upon the shipping bill. When the boat with its cargo reached Whitehall in the course of its voyage to Albany, said Mansfield applied to the plaintiff to advance him $110 upon the freight, stating to the plaintiff he needed that sum. The plaintiff advanced the $110, to the master, and the sum was indorsed upon the bill of lading, and notice thereof given to the consignees, the defendants. It was in proof, and not contradicted by any evidence, that there is a uniform custom of many years standing, for masters of vessels plying between Canada and Albany, Hew York, etc., to obtain advances upon freight, to indorse the same upon the bill of lading, and for the consignee, after receiving the bill of lading and the cargo, to retain the sum so advanced out of the freight, and to pay it to the person making the advancement.
Two or three days after the master had obtained the money advanced by plaintiff, and while the boat was still lying at the dock in Whitehall, the master abandoned the boat and cargo, and refused to proceed further.
The said Heustis, who sold the boat to said Mansfield, and who had not been fully paid the purchase-price, upon being informed of the situation, and upon the master’s refusal to proceed with the boat and cargo, took the same at his own expense, and delivered the cargo to the consignees, defendants, upon their paying him the balance of freight over the first advance upon account of it, and upon his indemnifying them against the claim of plaintiff upon the freight for his advancement. I think it must be assumed from the proceedings and contentions upon the trial, that the defendants paid, or advanced the $125, or *604 that the claim of plaintiff on account of his advance of the $110, is subordinate in every way to the advance of the $125, by whomsoever made.
The question is upon these facts: To whom were defendants legally bound to pay the balance of the freight, if to any one %
I have not been furnished in the case referred to by counsel, a clear or decisive answer to that question, and it must therefore be solved by application of the principles of law which have been laid down in relation to contracts of affreightment, and the position of the parties to the contract in this controversy.
The master of the vessel, in this case, undertook to carry the cargo of lumber from the port in Canada, where it was shipped, and deliver the same to the defendants, the consignees, at the port in Albany, and in consideration of his doing so, the defendants promised to pay him a certain sum of money or freight.
As between the parties to this contract, the carrier was not entitled to receive the freight, or any part of it, until he had performed his part of the contract, that is, delivered the cargo to its consignees at the port of Albany.
He must deliver, as well as carry it to the point of destination. Until he had done both, he is not entitled to any portion of the freight. Like entire contracts in relation to other subjects, performance is a condition precedent to the right of recovery. Angell on Carriers, § 282; Western Transportation Company v. Hoyt et al., 69 N. Y., 230, and the cases there cited.
The carrier refused to transport the cargo any farther than Whitehall, and there abandoned it, and the vessel altogether.
Now, at this point, the carrier had no claim against the defendants for any portion of the freight contracted to be paid for the carriage and delivery of the cargo.
Is there any evidence in the case, that at this point there was any new contract between the parties to it varying the old contract ?
Of course it was entirely competent for the parties to change the old, or make a new contract.
The parties were not together, and had no communication with each other, so far as the evidence in the case discloses. There is no evidence in the case showing that the defendants knew of the abandonment of the boat and cargo* by the carrier, or of his refusal to complete the carriage and delivery, until the cargo was brought to them by Mr. Heustis, and then all they would do was to pay the balance of the freight left after the payment of the $125 paid before *605 the boat left the port of shipment, thus recognizing the old contract and insisting upon its complete performance.
The rule of full performance of the contract to carry and deliver before there is any obligation to pay the freight, of course would be modified or done away with where the freighter or consignee should illegally interfere to prevent the performance of the contract by the carrier, and in such case the carrier would be entitled to recover at least the pro rata freight. But all the evidence in the case repels this theory, as well as the theory of any new or different contract than is contained in the original shipping bill.
It is clear that when the carrier refused to complete the contract upon his part, he had no right of recovery of any sum whatever for freight.
Assuming now that the advancement of the $110 by the plaintiff, and its indorsement upon the shipping bill, would work,_ or was in legal effect an assignment of that amount of freight, what results ? The assignee claims all his rights against the consignees from the assignor, and we have seen that the assignor had no rights or just claims against the consignees for any freight.
It will not be pretended that the position of the assignee is any better or stronger than that of his assignor. It cannot be perceived how a donee or assignee can receive or take anything where the donor or assignor has nothing to give or assign, especially in the absence of any act or declaration upon the part of the party who is sought to be charged or made liable.
Nor is it perceived how the custom the plaintiff proved in such cases would in any wise change this position of the parties.
I think the utmost effect that can be reasonably claimed from the custom proved is that the advancement made on account of the freight is an assignment of so much of the freight to be paid by the consignees to the carrier, and the presentation of the shipping bill by the carrier to the consignees, to collect his freight upon the completion of the carriage and delivery would be notice of such assignment, and that the consignee is required to retain so much from the freight and pay the same to the assignee upon demand at the place of delivery of the cargo. Perhaps to make this rule fully operative to bind the consignee, a knowledge of the custom upon the part of the consignee should be proven.
But, in the view we have taken, that question is not important in the decision of this case.
It may be proper, in the disposition of this case, to consider a little ¿farther the relations of the parties to this transaction.
*606 As we nave seen, the carrier refused to perform his contract with the consignees, leaving their property upon a boat tied to the dock at Whitehall, and, having no claim against the consignees for freight, certainly the consignees must have a right in this property, and to have it where it was contracted by the carrier to deliver it. If the carrier will not carry and deliver it there, the consignee must have the right to do so, and pay all necessary expenses in doing so. In this case, the transportation and delivery was consummated by Heustis, who had some interest in the boat as owner or lienor. Whether he did so at the request of the consignees, or by previous arrangement with them, does not appear. We think it was clearly competent for the assignee to complete the transportation, or to hire or to pay any one what was nesessary for so doing, and, as against the original carrier, to charge him or his freight the necessary expense thereof.
As we have seen, the carrier, under the circumstances, had no right to any freight, and, having failed to complete the contract, he is equitably and legally bound to have the necessary expense of completing his contract, deducted from his claim for freight, paying him the balance. This is all, perhaps more, than the carrier or his assignee could legally or equitably claim of the consignee. Any other rule than this would be harsh and inequitable upon the consignee. If the various assignees for advances may hold the consignees liable for their advances, at whatever point of the voyage the carrier may repudiate his contract, and refuse to carry further, then the consignees might have to pay the assignees the whole contract price or freight, and yet have practically to incur and pay nearly the whole expense of the transportation to the place of delivery besides. Assuredly the equity of the consignee must be stronger in such a case than the claim of the assignee.
The assignee makes the advance at his own risk. He is shown the contract, or shipping bill, and may see what the agreed freight of the whole voyage is to be, and knows how far the voyage has proceeded, and how much remains to be done, and the probable expense of the same.
The consignee has not requested the advancement, and knows nothing of it until after it hag been made. He has contracted with the carrier to have the property delivered at its destination for a certain specified freight. He is entitled to have it done at the agreed price and not to be compelled by the carrier and the maker of advances, and without the consent of the consignee, to pay a greater sum than the. freight.
I think it must be that the _ consignee has the right to-have the cargo carried and delivered at the contract price, *607 and that he has the right, when the contract is abandoned by the carrier, to expend what is necessary to complete such carriage and delivery, and to charge such expense to the carrier or against his claim for freight, or to any one claiming any right to freight derived from the carrier.