WELLINGTON P. MYNARD et al., Appellants, v. THE SYRA-
CUSE, BINGHAMTON & NEW YORK RAILROAD COMPANY,
Respondent.

Where general words in the contract of a common carrier, limiting his lia-
bility, may operate without including the negligence of the carrier or
his servants, it will not be presumed that they were intended to include
it; every presumption is against such an intention, and the contract will
not be construed as exempting from liability for negligence, unless it is
expressed in unequivocal terms.

Accordingly held, where, by a contract of shipment, the carrier, a railroad
corporation, in consideration of a reduced rate, was released from all
claims for any damage or injury "from whatsoever cause arising," that
the exemption did not include a loss arising from the carrier's negli-
gence; and that for such a loss it was liable.

It seems, that the rule in this State, that a common carrier may, by
express stipulation, exempt himself from liability for negligence, will
not be considered as overthrown or affected by the decision of the
United States Supreme Court to the contrary. (Lockwood v. R. R. Co.,
17 Wal., 357.)

The common-law liabilities of carriers attach to the carriers of animals, modified only so far as the cause of damage for which recompense is sought, is a consequence of the conduct or propensities of the animals undertaken to be carried.

*Cragin* v. *N. Y. C. R. R. Co.* (51 N. Y., 61) distinguished.

*Mynard* v. *S., B. & N. Y. R. R. Co.* (7 Hun, 399) reversed.

(Submitted October 3, 1877; decided November 13, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, reversing a judgment of the County Court of Cortland county, which affirmed the judgment of a justice of the peace in favor of plaintiff. (Reported below, 7 Hun, 399.)

This action was brought to recover damages for the loss of a steer, while being transported on defendant's road from Syracuse to Binghamton.

The contract of shipment contained this clause: "In consideration that the said company have, at our request, agreed to transport said stock at said reduced rate, we do hereby agree to, and do hereby release and discharge the said company from all claims, demands and liabilities of every kind and character whatsoever, for or on account of or connected with any damage or injury to or the loss of said stock, or any portion thereof, from whatsoever cause arising."

It was stipulated that the animal was lost by the negligence of the employees of the defendant, and without fault on the part of the plaintiffs.

*William H. Warren*, for appellants. Where a common carrier limits his liability by express contract, the common-law liability is qualified, so far only as the contract is special. (*Simmons* v. *Low*, 3 Keyes, 27; Story on Bailments, § 557; Ang. on Com. Car., § 220.) The words of limitation are to be construed most strongly against the common carrier. (*Steinwey* v. *Erie R. Co.*, 43 N. Y., 123; *Guillaume* v. *H. Am. Packet Co.*, 42 id., 212; *Magnin* v. *Dinsmore*, 56 id., 168; *Bostwick* v. *B. & A. R. R. Co.*, 45 id., 717; *Lamb* v. *C. & A. R. Tr. Co.*, 46 id., 271; *Wescott* v. *Fargo*, 61 id.,

542; *York Co.* v. *Cent. R. R. Co.*, 3 Wal., 107; *R. R. Co.* v. *Lockwood*, 17 id., 357; *D'Arc* v. *L. & N. N. R. R. Co.*, 10 Alb. L. J., 131, 300.)

*Ruger & Jenney*, for respondents.     Plaintiffs are presumed to have assented to the terms of the contract with defendant. (*Pindar* v. *Res. F. Ins. Co.*, 47 N. Y., 114; *Breese* v. *U. S. Tel. Co.*, 48 id., 132; *Kirkland* v. *Dinsmore*. 62 id., 171; *Fibel* v. *Livingston*, 64 Barb., 179.)     A common carrier can exempt himself from any loss or damage to freight he transports, even though caused by negligence. (*Wells* v. *N. Y. C. R. R. Co.*, 24 N. Y., 181; *Perkins* v. *N. Y. C. R. R. Co.*, id., 196; *Bissell* v. *N. Y. C. R. R. Co.*, 25 id., 442; *Poucher* v. *N. Y. C. R. R. Co.*, 49 id., 263; *Wells* v. *St. Nav. Co.*, 4 Seld., 375; *Cragin* v. *N. Y. C. R. R. Co.*, 51 N. Y., 61; *Lee* v. *Marsh*, 43 Barb., 102; *Keeney* v. *G. T. R. R. Co.*, 59 id., 104; *French* v. *B., etc., R. R. Co.*, 4 Keyes, 108; *Nicholas* v. *N. Y. C. R. R. Co.*, 4 Hun, 327; *Magnin* v *Dinsmore*, 56 N. Y., 168; *Boswell* v. *H. R. R. R. Co.*, 6 Bosw., 669; *Peck* v. *N. S. R. Co.*, 10 H. of L. Cas., 494; *Shaw* v. *York, etc.. R. Co.*, 13 Q. B., 347; *Austin* v. *Man., etc., R. Co.*, 16 id., 600; 10 C. B., 454; *Chippendale* v. *Lan., etc., R. Co.*, 7 Eng. L. & Eq., 395; *Car* v. *Lan., etc., R. Co.*, 7 Exch., 707; *Wyld* v. *Pickford*, 8 M. & W., 443; *Walker* v. *York, etc., R. Co.*, 2 El. & B., 750; *Hughes* v. *G W. R. Co.*, 14 C. B., 637; *Morville* v. *G. N. R. Co.*, 10 Eng. L. & Eq., 366; *Pardington* v. *So. Wales Co.*, 1 H. & N., 392; *McCawley* v. *Furness R. Co.*, L. R., 8 Q. B., 57; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 445.)

CHURCH, Ch. J.     The parties stipulated that the animal was lost by reason of the negligence of some of the employees of the defendant without the fault of the plaintiff.     The defense rested solely upon exemption from liability contained in the contract of shipment by which, for the consideration of a reduced rate, the plaintiff agreed to "release and dis-

charge the said company from all claims, demands, and lia-
bilities of every kind whatsoever for or on account of, or
connected with, any damage or injury to or the loss of said
stock, or any portion thereof, from whatsoever cause arising."

The question depends upon the construction to be given to
this contract, whether the exemption "from whatever cause
arising," should be taken to include a loss accruing by the
negligence of the defendant or its servants. The language
is general and broad. Taken literally it would include the
loss in question, and it would also include a loss accruing
from an intentional or willful act on the part of servants. It
is conceded that the latter is not included. We must look
at the language in connection with the circumstances and
determine what was intended, and whether the exemption
claimed was within the contemplation of the parties.

The defendant was a common carrier, and as such was
absolutely liable for the safe carriage and delivery of prop-
erty intrusted to its care, except for loss or injury occa-
sioned by the acts of God or public enemies. The obliga-
tions are imposed by law, and not by contract. A common
carrier is subject to two distinct classes of liabilities—one
where he is liable as an insurer without fault on his part;
the other, as an ordinary bailee for hire, when he is liable for
default in not exercising proper care and diligence; or, in
other words, for negligence. General words *from whatever
cause arising* may well be satisfied by limiting them to such
extraordinary liabilities as carriers are under without fault
or negligence on their part.

When general words may operate without including the
negligence of the carrier or his servants, it will not be pre-
sumed that it was intended to include it. Every presump-
tion is against an intention to contract for immunity for not
exercising ordinary diligence in the transaction of any busi-
ness, and hence the general rule is that contracts will not be
so construed, unless expressed in unequivocal terms. In
*New Jersey Steam Navigation Co.* v. *Merchants' Bank* (6
How. [U. S. R.], 344), a contract that the carriers are not

responsible in any event for loss or damage, was held not intended to exonerate them from liability for want of ordinary care. NELSON, J., said : " The language is general and broad, and might very well comprehend every description of risk incident to the shipment. But we think it would be going further than the intent of the parties upon any fair and reasonable construction of the agreement, were we to regard it as stipulating for willful misconduct, gross negligence, or want of ordinary care, either in the seaworthiness of the vessel, her proper equipments and furniture, or in her management by the master and hands." This rule has been repeatedly followed in this State. In *Alexander* v. *Greene* (7 Hill, 533), the stipulation was to tow plaintiff's canal boat from New York to Albany *at the risk* of the master and owners, and the Court of Errors reversed a judgment of the Supreme Court with but a single dissenting vote, and decided that the language did not include a loss occasioned by the negligence of the defendants or their servants. In one of several opinions delivered by members of the court, it was said, in respect to the claim for immunity for negligence : " To maintain a proposition, so extravagant as this would appear to be, the stipulation of the parties ought to be most clear and explicit, showing that they comprehended in their arrangement the case that actually occurred."

*Wells* v. *Steam Nav. Co.* (8 N. Y., 375,) expressly approved of the decision of *Alexander* v. *Greene*, and reiterated the same principle. GARDINER, J., in speaking of that case, said : " We held, then, if a party vested with a temporary control of another's property for a special purpose of this sort would shield himself from responsibility on account of the gross neglect of himself or his servants, he must show his immunity on the face of his agreement; and that a stipulation so extraordinary, so contrary to usage and the general understanding of men of business, would not be implied from a general expression to which effect might otherwise be given."

So, in the *Steinweg Case* (43 N. Y., 123), the contract

released the carrier "from damage or loss to any article from or by fire or explosion of any kind," and this court held that the release did not include a loss by fire occasioned by the negligence of the defendant; and, in the *Magnin Case*, still more recently decided by this court (56 N. Y., 168), the ·contract with the express company contained the stipulation " and, if the value of the property above described is not stated by the shipper, the holder thereof will not demand of the Adams Express Company a sum exceeding fifty dollars .for the loss or detention of, or damage to, the property aforesaid."

It was held, reversing the judgment below, that the stipulation did not cover a loss accruing through negligence, JOHNSON, J., in the opinion, saying: "But the contract will not be deemed to except losses occasioned by the carrier's negligence, unless that he expressly stipulated." In each of these cases, the language of the contract was sufficiently broad to include losses occasioned by ordinary or gross negligence, but the doctrine is repeated that, if the carrier asks for immunity for his wrongful acts, it must be expressed, and that general words will not be deemed to have been intended to relieve him from the consequences of such acts.

These authorities are directly in point, and they accord with a wise public policy, by which courts should be guided in the construction of contracts designed to relieve common carriers from obligations to exercise care and diligence in the prosecution of their business, which the law imposes upon ordinary bailees for hire engaged in private business. In the recent case of *Lockwood* v. *Railroad Co.* (17 Wal., 357), the Supreme Court of the United States decided that a common carrier cannot lawfully stipulate for exemption from responsibility for the negligence of himself or his servants. If we felt at liberty to review the question, the reasoning of Justice BRADLEY in that case would be entitled to serious consideration; but the right thus to stipulate has been so repeatedly affirmed by this court, that the question cannot with propriety be regarded as an open one in this State.

(8 N. Y., 375; 11 id., 485; 24 id., 181–196; 25 id., 442; 42 id., 212; 49 id., 263; 51 id., 61.)

The remedy is with the Legislature, if remedy is needed. But, upon the question involved here, it is correctly stated in that case that "a review of the cases decided by the courts of New York shows that, though they have carried the power of the common carrier to make special contracts to the extent of enabling him to exonerate himself from the effects of even gross negligence, yet that this effect has never been given to a contract general in its terms." Such has been the uniform course of decisions in this and most of the other States, and public policy demands that it should not be changed. It cannot be said that parties, in making such contracts, stand on equal terms. The shipper, in most cases, from motives of convenience, necessity or apprehended injury, feels obliged to accept the terms proposed by the carrier, and practically the contract is made by one party only, and should, therefore, be construed most strongly against him; and especially should he not be relieved from the consequences of his own wrongful acts under general words or by implication.

There was a period when the courts of England were inclined to relax this rule, and this led to the adoption of an act of Parliament on the subject, under which the courts have since acted. (See 10 House of Lords Cases, 473.)

It is argued that the rule does not apply to the carriage of animals; that, in respect to such property, the common-law liabilities of common carriers do not attach; that the carrier is only liable for negligence, and hence that the stipulation can apply to nothing else.

There might be some force in this point, if the position that carriers of animals are only liable for negligence or misconduct is correct. But that position cannot be maintained. The liability of carriers of animals is modified only so far as the cause of damage for which recompense is sought, is a consequence of the conduct or propensities of the animals undertaken to be carried. In other respects, the common-law responsibilities of the carrier will attach. This was expressly

held in *Clarke* v. *R. & S. R. R. Co.* (14 N. Y., 573), DENIO, J., said : "But the rule which would exempt the carrier altogether from accidents arising out of the peculiar character of the freight, irrespective of the question of negligence, would be equally unreasonable. It would relieve the carrier altogether from those necessary precautions which any person becoming the bailee, for hire, of animals is bound to exercise; and the owner, where he did not himself assume the duty of seeing to them, would be wholly at the mercy of the carrier. The nature of the case does not call for any such relaxation of the rule; and, considering the law of carriers to be established upon considerations of sound policy, we would not depart from it, except where the reason upon which it is based wholly fails, and then no further than the cause for the exemption requires." The case of *Palmer* v. *Railway Co.* (4 Mes. and Wels., 749), is cited, where the same principle is decided. Animals may die of fright, by refusing to eat, or break from their fastenings, and kill themselves, although every proper precaution was used; but there may be many accidents producing loss or injury to animals which are not attributable to acts of God, and which were not caused by the peculiar character of the property. By the act of God is meant something which operates without any aid or interference from man. (*Merritt* v. *Earle,* 29 N. Y., 115.) In that case it was held that the carrier was liable for the value of a span of horses lost by the sinking of a steamboat, caused by coming in contact with the mast of a sloop which had been sunk in a squall two days before. The court decided that sinking the steamboat was not caused by the act of God, and that the sinking of the sloop, although by the act of God, was too remote, and many accidents might happen producing loss to animals for which the carrier would be liable, although no fault or negligence could be imputed; and, in respect to such, the common-law liability would attach. Angell on Carriers, p. 180, lays down the same rule. The same qualification of liability applies to all property.

The carrier is excused from liability for loss caused by

inherent infirmity or tendency to decay. It has been held that a carrier is not responsible for the evaporation of liquids, nor for the diminution of molasses, caused by the oozing through vent holes necessary to prevent the bursting of barrels (Angel on Carriers, § 211, and cases cited) ; and exemptions from liability for loss by inherent qualities of animals, rests upon the same principle. Beyond this the common-law liabilities exist against the carrier of animals the same as the carrier of other property, and the clause in the contract can, therefore, operate in many cases where negligence cannot be imputed.

In Massachusetts in *Smith* v. *R. R. Co.* (12 Allen, 531), the court says : " The common-law liability of a carrier for the delivery of live animals is the same as that for the delivery of merchandise. Upon undertaking their transportation, he assumes the obligation to deliver them safely against all contingencies, except such as would excuse the non-delivery of other property." The qualification above referred to, excusing the carrier from liability of loss occasioned by the nature and character of the property, is recognized. This qualification or exception, as before stated, is applicable to all property, and does not affect the common-law liabilities to any greater extent than in respect to other property, except that the instances may be more numerous where the carrier will be excused. In Angell on Carriers (§ 214), it is said : " Such a case would seem to be analagous to the case of loss of merchandise owing to some inherent defect which caused the destruction of it while in transit." As well might carriers be exempted from common-law liabilities for loss of inanimate property as for animals, if immunity from loss from inherent defects, or from the nature and character of the property, will produce that result.

The only authority seeming to favor the position of the espondent is in *Cragin* v. *N. Y. C. R. R. Co.* (51 N. Y., 61). The loss of the hogs in that case was caused by heat, and the negligence attributed was in not cooling them off with water. We do not think, under the peculiar stipulation, and

the character of the property in that case, that it is in conflict with the views before expressed.

The judgment of the General Term must be reversed, and that of the County Court affirmed.

All concur, except ANDREWS, J., taking no part; FOLGER and MILLER, JJ., absent.

Judgment accordingly.