EDWARD P. McKINNEY AND CHARLES A. EVARTS, RESPONDENTS, *v.* HUGH J. JEWETT, AS RECEIVER, ETC., OF THE ERIE RAILWAY COMPANY, APPELLANT.

*Common carrier — duty of, to notify consignee of the arrival of goods — when liable for a neglect so to do — when a bill of lading does not relieve him from liability for a loss caused by his negligence.*

On March 4, 1876, a car-load of hams and shoulders was shipped to plaintiffs at Binghamton, at which place it arrived at 11:40 A. M. on March ninth, and was there run upon a side track where it remained until 5 P. M. of Saturday, March eleventh. The plaintiffs, who had repeatedly inquired for the car-load on Thursday, Friday and Saturday, being unable to remove them on Saturday without great risk and by working at night and on Sunday, did not remove

them to their store until Monday, when they were found to have been greatly injured by the heat, the damage having been occasioned after Thursday. The defendant was in the habit of notifying consignees of the arrival of goods by putting a receipt therefor in a pigeon-hole accessible to the consignees or their agents. In this case the notice was not put into the pigeon-hole until late on Saturday afternoon.

The bill of lading under which the goods were shipped provided that the defendant would "not be responsible for goods while at any station awaiting delivery, * * * nor for decay of perishable articles, nor for damages arising from heat or cold, or where occasioned by providential causes or by fire, * * * nor for delays from unavoidable causes."

In an action by the plaintiffs to recover damages for the injuries sustained by the heating of the hams, *held*, that the damages were caused by the negligence of the defendant in failing to deliver the hams and give the customary notice of their arrival to the consignees.

That the bill of lading did not relieve the defendant from liability for damages occasioned by his own negligence.

That the plaintiffs were entitled to recover.

APPEAL from an order denying a motion for a new trial made upon a case and exceptions, after a verdict rendered in favor of the plaintiffs.

*Chapman & Lyon,* for the appellant.

*William A. McKinney* and *Isaac Newton,* for the respondents.

BOARDMAN, J. :

On the 4th day of March, 1876, the plaintiffs by their agents purchased and shipped over defendant's road a car load of hams and shoulders consigned to plaintiffs at Binghamton, New York. The car arrived at Binghamton in due time, to wit., on March ninth, at 11.40 A. M., and was run upon a side track where it remained until 5 o'clock P. M. of Saturday, March eleventh. It being then too late to remove the cargo in business hours, or at all without great risk, except by working in the night and on Sunday, the plaintiff did not remove the hams and shoulders to their store until Monday the thirteenth, when they were found to be greatly injured by the heat. The amount of the damage as fixed by the verdict is $1,400. On Thursday, Friday and Saturday the cartman of plaintiffs repeatedly inquired for this car load of meats and made search for it. He

found no trace of it until late Saturday P. M., when he was notified of the arrival. The practice of defendant was and had long been to give notice of the arrival of freight by putting a receipt in a pigeon-hole, where the consignees or their agents could see the same. That should have been done on Thursday in the present case, but in fact it was not done until late Saturday afternoon. The damage to the meats occurred after Thursday. If the receipt had been put in the pigeon-hole on Thursday plaintiff would have known it on that day.

The neglect to inform plaintiff's cartman of the arrival, the running this car upon a side track and leaving it there for more than two days after its arrival, and the failure to give the usual notice of arrival by putting the receipt in the pigeon hole according to the known and uniform custom of doing such business, constitute the basis of plaintiff's claim to recover damages.

The defense relies upon a bill of lading given by the railroad company at Chicago to plaintiff's agents at Chicago, two days after the shipment of the meats and when they were well on the way to Binghamton. The bill of lading gives notice that railroad company will not be responsible as common carriers for said goods while at any station awaiting delivery * * nor for decay of perishable articles, nor for damages arising from heat or cold, or where occasioned by providential causes, or by fire, from any cause whatever, * * nor for delays from unavoidable causes.

It is seen, here are no words limiting the liability of defendant, in case of his or his agent's negligence, for damages which may be caused thereby. To be relieved from such liability the contract must be clear and specific. It presents once more the troublesome question how far may common carriers exempt themselves from their common-law liability for their own negligence by special contract. It is not clear that it is an open question in this State. By various decisions of our Court of Appeals it would seem that a company might lawfully contract as a common carrier to be relieved from its own negligence. (*Mynard* v. *S. B. and N. Y. R. R. Co.*, 71 N. Y., 180; *Magnin* v. *Dinsmore*, 56 id. 174; *Hill* v. *S. B. and N. Y. R. R.*, 73 id., 351.) The case of *Nicholas* v. *New York Central and Hudson River Railroad Company* (4 Hun, 327) cannot be regarded as a safe authority to follow. After having been once affirmed by Court of

Appeals on a tie vote, a reargument has been ordered, and upon such reargument the court were, as is understood, again equally divided. It is now upon a second reargument before that court for decision.

It will, we think, prove a matter to be regretted if it shall finally be held that common carriers can stipulate for exemption from liability for their own negligence. The rule of the Supreme Court of United States seems more just and reasonable. (*Railroad Co.* v. *Lockwood*, 17 Wall., 357, holding such agreements invalid.) And such is held to be the law in almost all American courts. (Wharton on Neg., § 589, and authorities cited in note.) The subject is regulated by statute in England. (17 and 18 Vict., ch. 31, § 7; Wharton on Neg., § 591.)

But perhaps that question is not involved in the present case. It is claimed by the plaintiffs, first, that the bill of lading does not exempt the defendant from liability for his own or his servant's negligence; and, secondly, that the injury suffered by plaintiffs is wholly due to the carelessness and negligence of the defendant and his agents. Both propositions, we think, are well founded.

By reference to the cases we have cited, it will be seen that exemption from negligence must be clearly and unequivocally stipulated for in the contract. It will not be presumed or inferred from doubtful or ambiguous expressions. In this case it is not expressly stated in the bill of lading, nor is there any language used from which we may fairly infer, that such a purpose existed or could fairly be understood. The defendant must then be held liable if the damages were the result of negligence.

It is equally clear that the injury was solely due to negligence. The goods were not at a station awaiting delivery while they were switched off on a side track, and the plaintiffs on inquiry for them could not learn that they had arrived. Besides, the custom of the defendant was to give a certain kind of notice by receipt, placed in a pigeon-hole accessible to plaintiff and operating as notice to them. Until such notice was given according to custom, and the goods were accessible, they were not at a station awaiting delivery. If decay or damage from heat or cold occurred without any negligence, the defendant would not be liable. But if decay or injury by heat was distinctly caused by the carelessness or negligence of

the defendant in the discharge of his duty as a common carrier, then defendant is liable. These questions were submitted to the jury, and have been found against the defendant. The findings are justified by the evidence. The meats would not have been damaged if they had been brought to the station and the usual notice given, or even the fact made known to plaintiffs upon inquiry by them. The jury has also found that plaintiffs were without fault in not taking the meats out of the car on Saturday night and during Sunday. The whole loss is due to the delay in bringing the car to the station and bringing that fact to the notice of plaintiffs, so that it could be unloaded. If this be called delay, it was not a " delay from unavoidable causes," as specified in the bill of lading, for which an exemption might be claimed. It was simply carelessness and neglect to do business as it should be done. The plaintiffs had no means of knowing what was in the defendant's cars backed out in the yard and locked up. It is preposterous to expect them to know by instinct when their goods arrived, and without notice, even after inquiry. The defendant cannot complain when the plaintiffs were held bound by a bill of lading, delivered to their agents in Chicago two days after the goods were shipped, and received by plaintiffs in Binghamton some little time thereafter.

We have examined the various exceptions to which our attention has been called, and find no errors for which a new trial should be granted. It is not necessary to notice them specifically.

The verdict of the jury has found all the facts against the defendant. The law has been held quite as favorable as it should be in the interest of the defendant. The result appears just and should not be disturbed.

The order denying a motion for a new trial should therefore be affirmed, with costs.

LEARNED, P. J., concurred; BOCKES, J., concurred in the result.

Order affirmed with costs.