CATHERINE WRIGHT, RESPONDENT, v. MUTUAL BENEFIT LIFE ASSOCIATION OF AMERICA, APPELLANT.

*Policy of insurance — when the company is bound by a stipulation printed on its back — an agreement not to question the validity of the policy, after the death of the assured, is not void as against public policy.*

December 6, 1883, the defendant issued a policy of insurance by which it agreed to pay to the plaintiff's assignor the sum of $5,000 upon the death of one Wright, the policy reciting that it was issued in consideration of the representations, agreements and warrantees made in the application. The application contained a stipulation that the application and the declarations therein contained, together with the answers and explanations given to the various questions in forms A and B, indorsed thereon, should form the exclusive and only basis of the agreement between the applicant and the defendant, and "that if any misrepresentation, or fraudulent or untrue answers or statements have been made, or if any facts which should have been stated to the association have been suppressed therein, * * * that then, in either event, such agreement shall become null and void, and all moneys which shall have been paid shall be forfeited to said association for its sole use and benefit."
Upon the back of the policy was printed, in large type, the following stipulation: "No question as to the validity of an application or certificate of membership shall be raised, unless such question be raised within the first two years from and after the date of such certificate of membership, and during the life of the member therein named."

Wright having died on June 4, 1885, and the defendant having refused to pay the claim, upon the ground that the representations and warranties contained in the application were fraudulent, the plaintiff brought this action to recover the amount agreed to be paid. Upon the trial the defendant offered to show that Wright, when the application was made, was afflicted with certain diseases which were among those enumerated in the application, and that he stated therein that he was not afflicted with either of them. The court excluded the evidence and directed a verdict for the amount due the plaintiff.

*Held*, that it did not err in so doing as the defendant was bound, by its stipulation, not to question the validity of the policy after the death of the insured.

That the language of the stipulation, providing that "no question as to the validity of an application or certificate of membership shall be raised," was broad enough to exclude a defense founded on fraud.

That the stipulation was intended to, and did, create a short statute of limitations in favor of the insured, within which limited period the insurer must test, if ever, the validity of the policy, and that it could not be held to be void as against public policy.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed at the Oswego Circuit.

December 6, 1883, the defendant, by its policy of insurance, agreed to pay Byron D. Houghton, upon the death of Charles F. Wright, "five thousand dollars from the mortuary fund of the association, at the time of said death, or from any moneys that shall be realized to said fund from the next assessment of all surviving members." It was recited in the policy that it was issued "In consideration of the representations, agreements and warranties made in the application." The application, which was signed by the insured, contained the following stipulation: "It is expressly stipulated and agreed  *  *  *  that the foregoing application and this declaration, together with the answers and explanations given to the various questions in forms A and B, indorsed hereon, shall form the exclusive and only basis of the agreement between the above named applicant and the Mutual Benefit Life Association of America, and that if any misrepresentation or fraudulent or untrue answers or statements have been made, or if any facts which should have been stated to the association have been suppressed therein  *  *  *  that then, in either event, such agreement shall become null and void, and all moneys which shall have been paid shall be forfeited to said association for its sole use and benefit."

In an answer to the question as to whether the applicant had been afflicted with any of a great number of diseases enumerated in the question, the applicant answered no. Upon the back of the policy, printed in large type, was the following stipulation : "No question as to the validity of an application or certificate of membership shall be raised unless such question be raised within the first two years from and after the date of such certificate of membership, and during the life of the member therein named."

June 4, 1885, the insured died, and on the sixteenth of the same month said Byron D. Houghton served defendants with proof of his claim, and about August third, at defendant's suggestion, an additional statement was served on defendant. August 15, 1885, the defendant issued a notice of assessment to its members in which it was stated that Charles F. Wright insured December 6, 1883, under policy 1096 for $5,000, died June 4, 1885, of inflammation of lungs and that the loss was adjusted August 12, 1885. It was further stated in said notice that "proof of death of the above named members having been received and found satisfactory, payment of the amount due according to the terms of the certificate has been ordered, and an assessment as below is now due from you." The amount of the claim was realized from the assessment and paid into the mortuary fund. The defendant then refused to pay the sum, and Houghton thereupon assigned the claim to the widow of the insured, who brings this action which is defended upon the ground that the representations and warranties contained in the application were fraudulent. Upon the trial the defendant offered to show that Wright, when the application was made, was afflicted with syphilis, consumption and sciatica, as was well known to him and Houghton. These diseases were among those enumerated in the application, and the insured stated that he was not afflicted with either of them. The trial court held that the defendant was bound by its stipulation not to question the validity of the policy after the death of the insured, excluded the evidence and directed a verdict for the amount due upon the policy, upon which a judgment was entered from which defendant appeals.

*G. H. Crawford,* for the appellant.

*F. E. Hamilton,* for the respondent.

FOLLETT, J.:

The defendant does not claim that its stipulation is not a part of the policy, but concedes by its argument that it has the same force as though contained in the body of the policy. A reversal of the ruling of the trial court is asked for upon the ground that the stipulation is not a legal bar to the interposition of the defense, that the representations and warranties on which the policy was issued were fraudulent because : (1) It is not expressly agreed that the corporation may not resist the payment of the policy after the death of the insured, or after the expiration of two years, for the fraud of the insured ; (2) That if the stipulation is broad and explicit enough to exclude, in terms, the defense of fraud, it is contrary to public policy and void.

In support of the first proposition we are referred to *Mynard* v. *Syracuse, etc., Railroad Company* (71 N. Y., 180) ; *Holsapple* v. *Rome, Watertown, etc. Railroad Company* (86 id., 275), and kindred cases, holding that general words by which a common carrier seeks to exempt himself from all liability for injury to persons or property carried will not be construed to exempt him from liability for damages caused by the carrier's negligence.

Common carriers are liable for negligence in carrying persons or property upon two grounds : (1) in tort, for a breach of duty, to the public, imposed upon them by the common law ; (2) upon contract, for a breach of it. The second ground of liability is of comparatively recent origin. (Ang. Car. [4 ed.,] § 422.) Carriers have been so long and strictly held liable in tort for a breach of their duty to the public for negligently carrying persons or property, that their liability is said to be founded on public policy, and the rule of the common law is given the force of a public statute. When parties seek, by contract, to avoid a liability imposed upon them by public statutes, or by the rules of the common law, based upon public policy, the exemption must be expressed by apt words and in unequivocal terms ; for the general words of exemption of a promissor will not be construed so as to relieve the party, whose words they are, from a liability arising from his own negligence.

There is a broad difference between a contract to insure, and a contract to carry. Insurers are not, like common carriers, liable for the non-performance of their contracts upon grounds of public

policy, as for a breach of duty to the public, but their liabilities are created and measured solely by their contracts.

The cases referred to construe the ambiguous stipulations against the party who devised and imposed them upon the other party; while in the case at bar, we are asked to construe a stipulation, which is called ambiguous, in favor of the party who devised and voluntarily made it a part of the contract.

The language, "no question as to the validity," is, in terms, broad enough to exclude the defense sought to be established. The remaining question is, whether the provision so construed contravenes any rule of public policy, and is for that reason void. The stipulation provides that the validity of the policy shall not be questioned after the death of the insured; and not after two years from the date of its issue. An action for the recovery of the sum insured not being maintainable until after the death of the insured, one effect of the stipulation, if valid, is to prevent the insurer from interposing as a *defense* the falsity of the representations of the insured. But its effect is not to prevent the insurer from *annulling the contract* upon the ground of the fraudulent representations of the insured, provided an action for that purpose is brought in the lifetime of the insured, and within two years from the date of the policy. The practical and intended effect of the stipulation is, as held by the trial court, to create a short statute of limitations in favor of the insured, within which limited period the insurer must test, if ever, the validity of the policy. It is settled that a stipulation in a policy limiting the time within which an action may be brought thereon, is not against public policy, and that an action begun after the lapse of the stipulated time cannot be maintained. (*Ripley* v. *The Ætna Ins. Co.*, 30 N. Y., 136; *Roach* v. *The N. Y. and Erie Ins. Co.*, Id., 546; *The Mayor* v. *The Hamilton Ins. Co.*, 39 id., 45; *Wilkinson* v. *The First National Fire Insurance Co.*, 72 id., 499; *Riddlesbarger* v. *Hartford Ins. Co.*, 7 Wall., 386.)

If a stipulation shortening the period within which the statute permits the insured to enforce his rights in the courts is not against public policy, it is difficult to see upon what ground a stipulation shortening the time which the statute and the rules of the common law give an insurer to enforce its rights in the courts, can be held

to contravene public policy.    In *Wood* v. *Dwarris* (11 Exch., 493), an action on a life policy was defended on the ground that it was issued upon the express condition, that if any statement in the application was untrue, the policy should be void ; and that certain statements were untrue.    The plaintiff replied, that the defendant issued a prospectus, which came to the knowledge of the insured, stating that all policies were indisputable, except in cases of fraud. The defendant rejoined, that the policy and the application formed the contract, and that the statement in the prospectus was not binding ; but the court held the rejoinder bad, and the stipulation binding.    The stipulation in that case did not, like the one at bar, cut off a defense based upon the fraudulent representations of the insured, but, in another respect, it was broader than the stipulation under consideration, because it absolutely cut off the insurer's right to litigate the validity of the policy because of the untruth of the representations, no time being given to the insurer in which to contest upon the ground that the representations were untrue.

A stipulation like the one under consideration ought to be an incentive for the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy is issued while the matter is fresh.    The witnesses are all alive and the exact truth can, if ever, be ascertained, and the stipulation prevents the insurer from lying by and receiving the premiums during the life of the insured, and after his death, when the good faith and truth of his representations cannot be supported by his oath, contesting the policy upon the ground that the insured's representations were false or untrue.    Such a stipulation is neither unreasonable nor contrary to public policy.

The stipulation in the application, that any fraudulent or untrue statements by the assured vitiates the policy, and the stipulation under consideration, are not inconsistent.    The stipulation in the application preserves the company's right to avoid the policy for fraud or untrue statements during the term limited.    In *Wood* v. *Dwarris* (*supra*), it was stipulated in the application that any untrue statement should render the policy null and void, but it was held that the stipulation that the policy should be indisputable was not controlled by the policy and application.    The defendant must abide by its stipulation, put forth for the purpose of attracting

customers, and it must be read in the sense in which the parties read it when the contract was entered into.

The judgment is affirmed, with costs.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.