## MILTON MFG. CO. v. CHICAGO, B. & Q. R. CO. (TAYLOR, Intervener).

(District Court, S. D. Iowa, Ottumwa Division.   September 15, 1916.)

1. RAILROADS ⬿469—FIRES—EXEMPTION FROM LIABILITY—LEASE.

A condition in a lease of part of a railroad right of way, whereby the lessee agreed to hold the railroad company harmless from all suits and claims for damage occasioned by fire communicated from locomotives of the company, whether caused by negligence or not, is valid, and no recovery can be had by the lessee.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665;  Dec. Dig. ⬿469.]

2. RAILROADS ⬿469—FIRES—EXEMPTION FROM LIABILITY—LEASE.

A lease of a portion of a railroad right of way, providing that the railroad company should not be liable for damage by fire communicated from its locomotives, though the result of negligence, provided that on termination of the lease according to an option reserved to either party the lessee should remove at once from the premises all structures and property not belonging to the company, and in case of failure the company might remove the same at his expense. The lessee terminated the lease, but continued in the possession of the property without any new lease or new arrangement as to possession. *Held* that, by continuing in possession in violation of his covenant to remove, the lessee could not escape the effect of the covenant freeing the railroad company from liability for fires communicated by its locomotives.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665;  Dec. Dig. ⬿469.]

3. PARTIES ⬿40(2)—INTERVENTION—INTEREST.

Where a railroad company allows sparks to escape from its locomotive, and they fire property, the railroad company cannot be subjected to two suits for the same wrong, although, if the property be subject to a mortgage, the mortgagee, having an interest therein, may intervene in a suit by the mortgagor.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 62, 67;  Dec. Dig. ⬿40(2).]

4. RAILROADS ⬿469—FIRES—EXEMPTION FROM LIABILITY—LEASES.

A lease of a portion of a railroad company's right of way declared that the lessee should hold the company harmless from all claims, demands, and suits for loss, injury, or damage, including loss or damage occasioned by fire communicated from the locomotives of the company, whether caused by negligence or not. The lessee erected a building on the demised premises, and gave a chattel mortgage upon its stock of goods therein contained. The mortgagee had no notice, either actual or constructive, of the lease or the exemption. *Held*, that the exemption should be construed merely as a contract of indemnity whereby the lessee was to protect the company from all claims, and therefore the mortgagee, not knowing of the covenant, might recover, where the mortgaged property was burned through the negligence of the company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665;  Dec. Dig. ⬿469.]

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. RAILROADS ☞469—FIRES—EXEMPTION FROM LIABILITY—LEASE—COVE-NANTS RUNNING WITH THE LAND.**

In such case the condition cannot be *held* applicable to the mortgage on the theory that it was a covenant running with the land; the giving of a chattel mortgage not amounting to a conveyance, and the lessee not parting with his interest

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665; Dec. Dig. ☞469.]

At Law. Action by the Milton Manufacturing Company against the Chicago, Burlington & Quincy Railroad Company, in which Henry C. Taylor, trustee, intervened. On demurrer to the petition and petition of intervention. Demurrer to petition upheld, and demurrer to petition of intervention overruled.

E. Rominger, of Bloomfield, Iowa, for plaintiff.
Palmer Trimble, F. T. Hughes, and E. L. McCoid, all of Keokuk, Iowa, for defendants.
D. H. Payne and Henry C. Taylor, both of Bloomfield, Iowa, for intervener.

WADE, District Judge. The plaintiff leased a portion of the right of way of the defendant, and erected thereon a plant for the manufacture of ax handles, which plant, together with the stock of manufactured products, machinery, and fixtures, was destroyed by fire alleged to have been caused by the negligence of the defendant. The plaintiff brings this action to recover damages for the loss of said property, and the intervener, Henry C. Taylor, trustee, intervenes in the action, alleging that at the time of the fire he held a mortgage for $7,000 upon the property destroyed.

It appears from the petition of plaintiff, and the petition of intervener, that plaintiff acquired its right to construct its manufacturing establishment by a lease executed by the defendant, which lease contained the following clause:

"The lessee agrees to hold the railway company and the Chicago, Burlington & Quincy Railroad Company, its lessor, harmless from all claims, demands, suits, attorney's fees, and expenses, for loss, injury, or damage, including loss or damage occasioned by fire set out from the locomotive of the railway company, whether caused by the negligence of the railway company or otherwise, to the person or property of the lessee, the railway company, or its employés, or any other person whomsoever, while on or about the demised premises."

By demurrer to the plaintiff's petition, and the petition of intervention, the defendant raises the question that conceding the loss through the negligence of the defendant, the foregoing clause in the lease exempts the defendant from liability either to plaintiff or to the intervener.

[1, 2] First. As to the plaintiff's cause of action, it has been repeatedly held, under leases containing similar provisions, that the lessee could not recover. Griswold v. Railway Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; City of New York Insurance Co. v. Railway Co., 159 Iowa, 129, 140 N. W. 373; Hartford Insurance Co. v. Railroad

Co., 175 U. S. 91, 20 Sup. Ct., 33, 44 L. Ed. 84; Hartford Co. v. Railway, 70 Fed. (8th Cir.) 201, 17 C. C. A. 62, 30 L. R. A. 193.

To avoid the rule announced in these decisions, the plaintiff alleges that prior to the time of the fire it had terminated the lease by serving notice in accordance with the terms thereof, and complying with the other provisions of the lease, authorizing either party to terminate the lease at any time.

It appears, however, from the petition, that, notwithstanding the alleged termination of the lease, the lessee continued in possession of the property without any new lease, and without any new arrangement as to such possession. Under these circumstances, I cannot hold that the lessee has any greater rights after the termination of the lease than it had while the lease was in force. One of the provisions of the lease is that upon termination thereof "the lessee shall remove at once from the premises all structures and property not belonging to the railway company, and in case of failure so to do the railway company may tear down or remove the same at the expense of the lessee." This provision of the lease made it the duty of the lessee, upon termination, to remove the property; and I cannot hold that, by continuing in possession of the property after the lease was terminated in violation of its covenant to remove, it acquired any greater rights, or rights less burdened, than those it possessed before the lease was terminated.

"The case of Bradley v. Covel, 4 Cow. 349, is analogous to the case before us, and in that the rule is fully recognized that, the tenant holding over without any new terms fixed, there is a tacit consent to the former terms of the lease." Newell v. Sanford, 13 Iowa, 191.

Under such a lease it is my opinion that when the party terminates it, and continues to occupy the property in violation of the terms of the lease, he must be held to elect to continue such possession, subject to all the conditions under which he held, while the lease was in force. He cannot, by his own wrong in remaining in possession in violation of the terms of the lease, place upon the lessor burdens from which, under the terms of the lease, the lessor was specifically exempt.

The demurrer to the petition of the plaintiff will therefore have to be sustained.

[3, 4] Second: Is the intervener—the mortgagee of the property kept upon the leased premises—barred from recovery by virtue of the contract between the landlord and the tenant?

It does not clearly appear what specific property was covered by the mortgage, but it is alleged that it covered "an interest in all of said property," which is described as "a large stock of handles and material for the manufacture of handles." So that it affirmatively appears that the trustee was the mortgagee in a chattel mortgage covering personal property contained in buildings upon the leased premises. It further appears from the petition that the mortgagee had no notice, either actual or constructive, of the lease, or the provisions in the lease, pertaining to exemption from damage by fire or other acts caused by the negligence of the defendant.

The first question necessary to be determined, so far as the intervener is concerned, is: What was the effect of the clause in the lease

above quoted? It will be observed that the lessee agrees "to hold the railway company and the Chicago, Burlington & Quincy Railroad Company, its lessor, harmless from all claims, demands, suits, attorney's fees, and expenses, for loss, injury, or damage, including loss or damage occasioned by fire set out from the locomotives of the railway company, whether caused by the negligence of the railway company, or otherwise, to the person or property of the lessee, the railway company, or its employés, or any other person whomsoever, while on or about the demised premises."

Does this language of the contract undertake to exempt the company from liability for negligence, or does it undertake to bind the lessee to indemnify the company for any damages it might be compelled to pay because of its negligence? Even if it undertook to exempt the railway company from liability for negligent destruction of the property of a third person, I do not believe that in the absence of consent of the third person to the terms of the contract, or at least in the absence of notice to him, that he would be bound by the contract between the lessor and the lessee. In fact this has been repeatedly held.

In Texas & Pacific Railway Co. v. Watson, 190 U. S. 287, 23 Sup. Ct. 681, 47 L. Ed. 1057, where cotton was destroyed upon a platform erected by a lessee under a contract similar to the contract in this case, the Supreme Court of the United States says:

"Seventh. The remaining assignment of error is to the effect that error was committed by the appellate court in affirming the judgment despite the fact that the trial court refused to admit in evidence the stipulations and exemptions from liability from loss caused by fire contained in the lease under which the lessee held possession and occupancy of the storage platform on which the cotton in question was when destroyed by fire. As Watson was not in privity with the lessee—and it is conceded he had no knowledge of such stipulations when he stored his property on the platform—there was no tenable ground on which to contend that he was in any wise bound by the stipulations in question."

In Brewer v. Railway, 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647, the subject is fully considered in the following:

"It, however, does not appear that the plaintiff's intestate had any knowledge or information of the provisions of the contract between the two companies. When he entered into the service of the express company, he assumed the ordinary hazards incident to that business in his relation to that company, but there was no presumption, or implied understanding, that the messenger took upon himself the risks of injury he might suffer from the negligence or fault of the defendant. He was in no sense the employé of the defendant, nor could he, without his consent, be subjected to the responsibilities of that relation. Railway Co. v. Ivy, 71 Tex. 409 [9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758]. He was lawfully in the car, having the charge of the property and business there of the express company under its employment; and, although he paid no fare to the defendant, was carried by virtue of no contract made by him personally with the latter, and must have understood that he was there pursuant to some arrangement of his employer with the defendant, he was not necessarily by that fact chargeable with notice of the provisions in question of the contract. Presumptively, he was entitled to protection against personal injury by the negligence of the defendant. Blair v. Railway Co., 66 N. Y. 313 [23 Am. Rep. 55]; Nolton v. Railway Co., 15 N. Y. 444 [69 Am. Dec. 623]; Smith v. Railroad Co., 24 N. Y. 222; Id., 29 Barb. 132; Collett v. Railroad Co., 16 Adol. & E. (N. S.) 984. And it is not seen how Brewer could, without his knowledge or consent, be placed in such relation to the defendant as to relieve it from liability to him for the consequences

of its negligence affecting him personally  His contract of employment with the express company for its service did not, so far as appears, impose upon him such hazards, nor was he·chargeable with the stipulations in the contract between those companies, except so far as they, through notice to him or otherwise, entered into that pursuant to which he went into, or remained in, the service of the express company.  The negligence of the defendant was the violation of its duty.  It was the want of the care to which the plaintiff's intestate was entitled for his protection.  This duty, and such right, did not depend or rest upon contract, but upon the relation as carrier of the plaintiff, and the care which the defendant, as such, was required to exercise.  It is violated duty that furnishes the ground of an action for negligence, and, where there is no duty, there is no liability for such cause.  We are unable to see, in principle, any legal support for the proposition that a person entering into a contract of service with one employer may, without his knowledge or assent, be made to assume the hazards of a service conducted by another, and in which he is not engaged, and be personally subjected to the consequences of the negligence of the latter, without remedy against him.  No such question was in the case of Seybolt v. Railroad Co., 95 N. Y. 562 [47 Am. Rep. 75], which arose out of the same disaster.  The contract between the companies did not purport to relieve the defendant from its duty to exercise due care for the protection of the messenger.  Nor did the defendant take from it any· right to disregard such duty; but whatever right to relief from the consequences of its negligence in that respect the defendant derived from the contract arose, by way of indemnity, upon the stipulations of the express company."

The mortgagee of property is the owner of an interest therein, and in case of its negligent destruction he has the right, in a proper proceeding, to recover against the wrongdoer; the wrongdoer cannot be subjected to two suits for damages—one by the mortgagor and one by the mortgagee.  The wrongdoer is entitled to have all the questions of liability determined in one action, and where, as in this case,· the mortgagor brings suit, the mortgagee has a right to intervene, and, despite the fact that the mortgagor is barred from recovery because of some private stipulation between him and the lessor, the right of the mortgagee to proceed to recover for the wrong done to him as mortgagee cannot be denied.  I do not know of any reason why the interest which the mortgagee owned in this property should not be considered, for all the purposes of this case, property for the destruction of which the mortgagee should be entitled to recover to the extent of his interest, unless he is barred by the provisions of the lease.

And in the absence of knowledge or notice I do not see any reason why such mortgagee, who in good faith and in the ordinary course of business accepts a mortgage upon property contained in a building or warehouse erected upon railway ground under such a lease, should not, so far as a wrongdoer is concerned, stand in practically the same position as did the owner of the cotton stored upon the platform in the Watson Case, supra.

But my construction of this lease is not that it exempts the company from all liability for negligent destruction of the property of a third person.  A contract of this kind should be strictly construed.  It is a contract close to the line of invalidity upon grounds of public policy.  It is a contract evidently prepared by the defendant, and in case of doubt should be most strictly construed against it.  In Kenney v. Railway, 125 N. Y. 422, 26 N. E. 626, the Supreme Court of New York says:

"Our decision, however, is placed upon the ground that this contract does not, in unmistakable language, provide for an exemption from liability for the negligence of the defendant's employés. The rule is firmly established in this state that a common carrier may contract for immunity from its negligence, or that of its agents, but that, to accomplish that object, the contract must be so expressed, and it must not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule, and forbid its operation, except where the carrier's immunity from the consequences of negligence is read in the agreement ipsissimis verbis. The doctrine of such contracts was stated by this court in the case of Perkins v. Railroad Co., 24 N. Y. 196, 206 [82 Am. Dec. 281]. It was reiterated in the opinion of Judge Allen in Blair v. Railroad Co., 66 N. Y. 313, 318 [23 Am. Rep. 55]; and in Mynard v. Railroad Co., 71 N. Y. 180 [27 Am. Rep. 28], Church, C. J., reviewing the question at some length, considered the prior decisions of this court, and referred to certain decisions in the United States Supreme Court holding a different doctrine as to such agreements. In recognizing the right of the carrier to contract for its immunity from the results of negligence, he stated the general rule to be that such contracts must be expressed in unequivocal terms. This decision was followed, as being decisive of the question, in the later decisions in Holsapple v. Railroad Co., 86 N. Y. 275, Nicholas v. Railroad Co., 89 N. Y. 370, and Canfield v. Railroad Co., 93 N. Y. 532 [45 Am. Rep. 268]. The cases cited related to the carriage both of goods and of persons, but no reason exists for making a distinction in the application of the rule that general words and language, capable of other operation, will not be construed to limit the responsibility of the carrier for negligence. The rule is a salutary and a reasonable one. It offers no difficulties in its reduction to practice in the making of contracts, and its reiteration by us, in this case, is profitable if it serves to establish it more firmly as a rule for the governance of agreements designed to affect such immunity as is claimed to exist here. In this case the clause in question is capable of another meaning. It may be read, not necessarily as releasing or preventing an action by employés of the express company against the railroad company for damages for injuries received while on the road, but as an agreement to indemnify the railroad company in the event of such an action. That would be a perfectly proper agreement for the parties to make as a part of the consideration for the contract, and, while we need not say that such is the construction, we point it out as a possible one."

Considering a similar contract, the United States Circuit Court, in Southern Railway Co. v. Blunt & Ward, 165 Fed: 258, says:

"Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule, and forbid its operation, except where the carrier's immunity from the consequences of negligence is read in the agreement (in so many words)—ipsissimis verbis. It must not be left to a presumption from the language. Such a contract, however, may be read as an agreement to indemnify the railroad company, in the event of an action against it, for recovery of damages caused by its negligence, and that would be a perfectly proper agreement for the parties to make, as a part of the consideration for the contract."

The court in this case further says:

"The plaintiff was primarily liable to these third parties and it is indemnified against these very judgments that under the contract is being claimed by the railway company."

In considering a like question in Stephens v. Railway, 109 Cal. 86, 41 Pac. 783, 29 L. R. A. 751, 50 Am. St. Rep. 17, the Supreme Court of California says in sustaining the validity of such a contract:

"It must be borne in mind that the lessees of defendant under these contracts are no part of the public. Each one of them has sold his right as one

of the public, and is not in a position to complain as to the burdens cast upon him as an individual. The public here are the people holding no leases. The defendant in this case not only owes the public the same duty after the execution of the lease that it did before, but there is no reason in the world why it would not perform that duty in the same way as it had done in the past, however careful or neglectful that performance might be. Why would not this be so? For the public had the same rights and the same remedies against the defendant after as before the execution of the lease, and likewise the defendant was liable for damages in the same amount, upon the same property, and upon the same facts. It thus appears that the contract in no way changed the relations and conditions existing between the defendant and the public."

Under these authorities, and upon sound principles of public policy, it is my judgment that the stipulation in the lease in controversy, should be construed merely as a contract of indemnity—an agreement by the lessee to indemnify the railway company for any loss it might sustain by reason of being held liable for negligence which resulted in the destruction of property upon the leased premises. It would have been easy, if it were the intention, to specifically state that property upon the premises should be at the risk of the owner thereof, and that the company would not be liable for its destruction even through its negligence; but even with such a condition, under the authorities above cited, I hardly see how a third person, with no knowledge or notice of such a condition, would be bound thereby.

It would be a harsh rule which would permit a secret contract between a lessor and lessee to bind third persons without their knowledge or consent. Here is a manufacturer, who erects its factory upon the railway right of way; it must buy and sell in the ordinary course of business. It must ordinarily borrow money, and perhaps execute bills of sale or mortgages upon its property to secure the payment of borrowed money, or to secure those from whom goods are purchased. The nominal rental of $10 per annum is not the consideration; the real consideration is the additional business which the transportation of its freight will bring to the railway company. It is interested in the progress and in the development of the factory. It does not seem reasonable that it was the intention of the railway company to affect the rights of the public who would be compelled to transact business with the lessee.

This mortgagee, so far as the record is concerned, had a right to examine this property, ascertain its value, look upon it as any other property in a factory, and extend credit upon it, and it would be unjust, after the destruction of the property through the negligence of the defendant, to confront him with a private stipulation between the parties, permitting, in effect, the railway company, through its negligence, to destroy the property and leave him without security of any kind. Before such a result can be justified by the court, if at all, the contract should be clear and certain and unambiguous.

I am required to hold that, so far as the interests of third persons are concerned, the provisions of the lease are merely an agreement by the lessee to indemnify the lessor against loss, and that the mortgagee is not bound by said personal and private stipulation.

[5] Much is said about this being a "covenant which runs with the

land." But the land was not conveyed, so far as appears from the record; the lessee did not part with his interest as lessee; he simply executed a chattel mortgage upon property stored upon the leased premises. It does not appear whether the mortgage was upon the building or not, so that I am not passing upon the question presented upon the assumption that this was a real estate mortgage.

The demurrer to the petition of intervention will be overruled. The defendant excepts.